Not for Publication

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |  |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 99-31833 |
|  | ) |  |  |
| EDWARD J. WATERS, | ) | CHAPTER | 7 |
|  | ) |  |  |
| DEBTOR. | ) | DOC. I.D. NOS. | 477, 487, 527, 534, 538 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

## **APPEARANCES**

Ann M. Nevins, Esq.                       Attorney for Movant United States of
Assistant U.S. Attorney                       America, Internal Revenue Service
U.S. Attorney's Office
915 Lafayette Boulevard, Room 309
Bridgeport, CT 06604


Peter Sklarew, Esq.                       Attorney for Movant United States of
Attorney, Tax Division                       America, Internal Revenue Service
U.S. Department of Justice
P.O. Box 55
Washington, DC 20044


Edward J. Waters                       *Pro Se* Debtor/Movant
Avalon Place
137 Hollow Tree Ridge Road, #1903
Darien, CT 06820


Joan E. Pilver, Esq.                       Attorney for State of Connecticut,
Assistant Attorney General                       Department of Revenue Services
Attorney General's Office
Department of Revenue Services
55 Elm Street, 5th Floor
Hartford, CT 06106


Michael J. Daly, Esq.                       Chapter 7 Trustee
Law Offices of Michael J. Daly, LLC
3 Forest Park Drive
Farmington, CT 06032

## MEMORANDUM OF PARTIAL DECISION AND ORDER RE:
## MOTION FOR DETERMINATION OF TAX LIABILITIES

Lorraine Murphy Weil, United States Bankruptcy Judge

Before the court are the following (collectively, the "Contested Matter"): (a) United States'

Motion Pursuant to Rule 9014 for Determination of Both the Estate's and the Debtor's Tax

Liabilities Pursuant to § 505(a)(1) and Thereafter To Authorize Their Payment from the Escrow

Account and/or by the Trustee (Doc. I.D. No. 477, the "Tax Determination Motion")[1]; (b) the above-

referenced debtor's (the "Debtor") objection thereto (Doc. I.D. No. 487, the "Debtor's Tax

Determination Objection"); (c) the United States' Motion for Partial Summary Judgment in § 505

Contested Matter To Determine Mr. Water's 2001-Year Tax Liabilities (Doc. I.D. No. 527, the "S/J

Motion"); (d) Edward J. Waters' Cross-Motion for Partial Summary Judgment in § 505 Contested

Matter To Determine Mr. Waters' 2001: Form 1040 Tax Liabilities (Doc. I.D. No. 534, the "S/J

Cross Motion")[2]; and (e) the Debtor's "Second Objection": To IRS' Second Determination of 2001

Tax Liability and IRS Motion for Partial Summary Judgment (Doc. I.D. No. 538, the "Second

Objection"). The court has jurisdiction over the Contested Matter as a core proceeding pursuant to

---

[1]    Citations herein to the docket of this title 11 case appear in the following form: "Case
Doc. I.D. No. ___." The movant with respect to the Tax Determination Motion hereinafter is
referred to as the "IRS."

[2]    Although labeled strictly as a "cross-motion," the court deems the subject pleading
also to be an objection to the S/J Motion.

28 U.S.C. §§ 157 and 1334, 11 U.S.C. § 505(a)(1)[3] and that certain Order dated September 21, 1984

of this District (Daly, C.J.).[4]

## I.   **BACKGROUND**

As this court has noted previously, since 1991 the Debtor has filed five title 11 cases

(including this case).[5]  Throughout those cases, there have been two *leitmotifs*: saving the Debtor's

home located at 40 Swift's Lane, Darien, Connecticut (the "Property") from foreclosure of a

mortgage (the "Mortgage") thereon; and dealing with the Debtor's individual state and/or federal tax

---

[3]       References herein to title 11 of the United States Code and/or to the Bankruptcy Code
are references to the same as they existed prior to their amendment by the Bankruptcy Abuse
Prevention and Consumer Protection Act of 2005.

[4]       That order referred to the "Bankruptcy Judges for this District *inter alia*" all
proceeding arising under Title 11, U.S.C., or arising in . . . a case under Title 11, U.S.C. . . ."

[5]       Those title 11 cases are:

- a chapter 11 case (Case No. 91-52987, the "1991 Case") filed in this district on October 31,
1991.  The 1991 Case was converted to a case under chapter 7 of the Bankruptcy Code and
the Debtor was granted a discharge (the " 1991 Discharge") therein on November 5, 1992.

- a chapter 13 case filed in this district in 1993 and dismissed in 1994 on eligibility grounds.
(An appeal of that dismissal order subsequently was dismissed.)

- a chapter 13 case filed in this district in 1995 and dismissed on eligibility grounds in 1996.
(An appeal of that order was dismissed on the stipulation of the parties.)

- this title 11 case filed on December 19, 1997.  This case originally was assigned to the
Honorable Alan H.W. Shiff but was reassigned to the undersigned by order dated May 6,
1999 and given the above-captioned docket number.

- a chapter 11 case filed in this district on June 2, 2000 (while this case was pending).  That
case originally was assigned to Judge Shiff but was reassigned to the undersigned by order
dated September 26, 2000 and given a new docket number (Case No. 00-34156, the "2000
Case").  That case was dismissed prior to plan confirmation in accordance with the
Stipulation (as that term is defined below).

liabilities. Those two themes now have converged to produce (in one way or another) the instant disputes with respect to the Debtor's and the former chapter 11 estate's (the "Estate") respective federal tax liabilities for the 2001 tax year.

This case originally was filed as a chapter 13 case on December 19, 1997. This case was converted to a case under chapter 11 by order dated July 16, 2001. (*See* Doc. I.D. No. 181.) The Debtor served as debtor in possession[6] during the chapter 11 phase of the case. This case then was converted (on motion of the Debtor) to a case under chapter 7 by order dated March 10, 2004. (*See* Doc. I.D. No. 413.) Michael J. Daly was appointed as the chapter 7 trustee (the "Trustee").

During the chapter 13 phase of the case, the Debtor, the IRS and the Connecticut taxing authority (the "DRS"), among others, entered into a certain Stipulation "So Ordered" by this court on July 16, 2001. (*See* Doc. I.D. No. 180, the "Stipulation.") The Stipulation was intended (at least in part) to settle the IRS' motion to convert the case to chapter 7 (Doc. I.D. No. 127, the "IRS Motion To Convert"), a motion supported by the DRS (*see* Doc. I.D. No. 160).[7] The Stipulation contemplated (among other things), the aforesaid conversion of this case to chapter 11 and, subsequently, a sale of the Property relatively promptly postconversion.[8] The Debtor filed a motion (Doc. I.D. No. 204, the "Sale Motion") on August 21, 2001 (during the chapter 11 phase of the case)

---

[6]    A chapter 11 debtor in possession is the equivalent of a trustee, 11 U.S.C. § 1107(a), and is a fiduciary for the estate and its creditors, *In re United Healthcare Sys., Inc.,* 200 F.3d 170, 177 n.9 (3d Cir. 1999), *cert. denied,* 530 U.S. 1204 (2000).

[7]    The IRS Motion To Convert asserted that the Debtor was ineligible for chapter 13 relief under Bankruptcy Code § 109(e) and that the Debtor's proposed chapter 13 plan was infeasible and unconfirmable.

[8]    Through a complex process (described below), the Mortgage on the Property had passed to an entity friendly to the Debtor.

to sell the Property free and clear of liens for $2.075 million in cash consideration pursuant to an

Agreement for Sale of Real Estate (annexed to Doc. I.D. No. 215, the "Sale Contract"). That motion

was approved by an order (Doc. I.D. No. 215, the "Sale Order") entered on September 6, 2001. The

sale (the "Sale") of the Property closed on October 26, 2001. As explained more fully below, certain

deductions were made from Sale proceeds[9] (including for unpaid real property taxes, the "Property

Taxes"),[10] and the balance of the Sale Proceeds was paid in respect of the Mortgage. As

contemplated by the Stipulation, certain of the Mortgage proceeds are now on deposit in an escrow

account (the "Escrow") awaiting distribution pursuant to further order of the court.[11]

While the case was in chapter 13, only a single taxable entity existed: the Debtor. *See* 15

Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ TX3.02[1][c] (15 ed. rev. 2007)

("*Collier on Bankruptcy*"). However, conversion of the case to chapter 11 caused two taxable

entities to exist: the Debtor individually; and the Estate. *See* 26 U.S.C. § 1398; *see also Collier on

Bankruptcy* ¶ TX3.02[1][b]. When the Debtor filed the Estate's 2001 fiduciary tax return, he

charged the gain on the Sale to the Estate which produced a gain tax liability for the Estate in the

approximate amount of $281,000.00. When the Debtor filed his individual ("Second Amended")

tax return for 2001 (the "Personal Return"), he reported "foreign wages" in the amount of

$1,356,340.00. On that same amended return, the Debtor (a) took as business expenses on his

---

[9]       The gross proceeds of the Sale hereafter are referred to as the "Sale Proceeds."

[10]       For purposes of this opinion only, the term "Property Taxes" does not include some
small portion (*i.e.,* about $20,000 to $30,000) of the Property Taxes which were paid from a source
other than Sale Proceeds. (*Cf.* Doc. I.D. No. 567 (transcript of 5/1/2007 hearing) at 47:4-9 (remarks
of Attorney Sklarew).)

[11]       Additional Mortgage proceeds may be in the possession of the Trustee. (*See* A.P. No.
05-3054 Doc. I.D. No. 39.)

Schedule C ("Profit or Loss from Business"[12]) $1,424,042.00 in Mortgage interest (the "Mortgage Interest") paid from the Sale Proceeds and $200,000.00 for certain "legal and professional services" (the "Professional Fees") discussed more particularly below and (b) reported the payment of the Property Taxes in the amount of $124,793.00 on his Schedule A as an "itemized deduction." (*See* Doc. I.D. No. 538, Exhibit 1.) The IRS issued a notice of deficiency (dated February 22, 2005, the "Deficiency Notice") with respect to the Personal Return disallowing the adjustments/deduction (as the case may be) for the Mortgage Interest, the Property Taxes and the Professional Fees. (*See* Doc. I.D. No. 487, Exhibit II.)

The IRS filed the Tax Determination Motion on September 9, 2005 again challenging the Debtor's treatment of the Mortgage Interest, the Property Taxes and the Professional Fees on the Personal Return,[13] and the Debtor filed the Debtor's Tax Determination Objection on April 10, 2006, again claiming the propriety of his treatment of those items on the Personal Return on various theories including the theory that the IRS should be barred from challenging some or all of such items on the theories that the IRS allegedly committed "fraud on the court" in connection with the conversion of this case from chapter 13 to chapter 11 and/or should be equitably (or judicially) estopped from challenging those items on similar grounds (all three grounds, collectively, the "Affirmative Defense").[14]

---

[12]    That item is an adjustment to "gross income" rather than an itemized deduction.

[13]    The IRS does not now rely on at least some portion of the theory of disallowance stated in respect of the Deficiency Notice but, rather, (as is its right) now relies on a different theory.

[14]    The IRS argues that this court lacks jurisdiction over the Affirmative Defense. Because of the disposition reached below, it is unnecessary for the court to reach the jurisdictional issue.

The IRS filed the S/J Motion with respect to the proper treatment of the Mortgage Interest, the Property Taxes and (now only certain of) the Professional Fees. The Debtor has filed the S/J Cross Motion and the Second Objection asserting the propriety of his treatment of all three items on the Personal Return (or the estoppel of the IRS from contesting the same). The parties have complied with Local Rule 56 of the District Court, oral argument has been had and the matter is ripe for the decision set forth below.

## II.    **SUMMARY JUDGMENT STANDARD**

"Summary judgment is appropriate only if the pleadings and submissions . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *The Andy Warhol Foundation for Visual Arts, Inc. v. Hayes (In re Hayes),* 183 F.3d 162, 166 (2d Cir. 1999). *See also* Fed. R. Civ. P. 56(c) (made applicable here by Fed. R. Bankr. P. 7056). The movant bears the burden of establishing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case."). The court must view all ambiguities and draw all reasonable inferences in the light most favorable to the nonmovant. *See Novak v. Blonder (In re Blonder)*, 246 B.R. 147, 150 (Bankr. D. Conn. 2000) (Krechevsky, J.). Ultimately, the role of the court is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

III.   **FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**

The court finds and/or concludes that there is no genuine issue of fact with respect to the

following (the "Uncontested Facts"):[15]

1.   At the beginning of 2001, the Property was subject to the Mortgage held by Alaska Seaboard Partners Limited Partnership ("Alaska Seaboard"). The Debtor had not reaffirmed his personal liability on the Mortgage pursuant to Bankruptcy Code § 524(c) in the 1991 Case in which he had received the Discharge. (Doc. I.D. Nos. 529 ¶ 1, 535 at 3.)

2.   At all relevant times, the Debtor was the sole shareholder, sole Director, sole employee, chairman, President and CEO of an offshore entity called Cape & Islands Investment Company Limited ("CIIC"). (Doc. I.D. Nos. 529 ¶ 2, 533 ¶ 2.)

3.   CIIC was formed under the laws of the Commonwealth of the Bahamas for the purpose of international investment banking. CIIC had a British Virgin Islands subsidiary with which it was merged in 1998. After the merger, CIIC continued to operate under the same name under the laws of the Territory of the British Virgin Islands, under its International Business Companies Act. (Doc. I.D. Nos. 529 ¶ 3, 533 ¶ 3.)[16]

4.   The Debtor had a contractual arrangement to receive, as wages, all of CIIC's receipts less its expenses annually. (Doc. I.D. Nos. 529 ¶ 4, 535 at 4-5.)[17]

5.   On January 3, 2001, CIIC received a large investment banking fee amounting to approximately $900,000 (net of expenses) on an international transaction. (*See* Doc. I.D. Nos. 529 ¶ 5, 535 at 5.)

6.   Instead of having CIIC distribute the funds to the Debtor, the Debtor used his position as President and Chief Executive Officer of CIIC for CIIC to lend $930,000

---

[15]   Not all the following facts may be "material" for the purposes of the determinations set forth below, but the court includes those facts because they may be "material" with respect to further proceedings on the S/J Motion.

[16]   The foregoing is the Debtor's position which the court accepts for the limited purposes of these summary judgment proceedings.

[17]   The IRS concedes the "wages" issue (and that such "wages" constitute a legitimate business expense of CIIC) for the purposes of the S/J Motion only and has reserved the right to assert that CIIC is the alter ego of the Debtor. *See* Doc. I.D. Nos. 528 at 4 n.4 and 542 at 14 n.8.

to Dean 40 Swift, LLC ("Dean 40") which combined those loan proceeds with the proceeds of an additional loan of $526,316 from Tuthill Finance, a Connecticut Limited Partnership ("Tuthill"), to purchase an assignment of the Mortgage against the Property for $1,430,000. As of October 26, 2001, the balance on the Mortgage was $1,998,273.29. (Doc. I.D. Nos. 529 ¶ 6, 535 at 5-8, 240 (Affidavit of Debt).)

7.   The Mortgage was formally assigned by Alaska Seaboard to Dean 40 using the $930,000 supplied by CIIC and the $526,316 supplied by Tuthill, to cover the $1,430,000 agreed acquisition price for the Mortgage, plus expenses.  Under the terms of the agreement between CIIC, Tuthill, and Dean 40, Tuthill would have a senior claim to repayment of its $526,316, with interest and expenses, and the remainder of the Mortgage proceeds collected would go to CIIC. (Doc. I.D. Nos. 529 ¶ 7, 533 ¶ 7.)

7A.   The IRS filed a Proof of Claim (the "1998 Proof of Claim"), dated February 4, 1998, during the chapter 13 phase of this case.  In the Proof of Claim, the IRS asserted total unsecured general claims for the Debtor's tax returns for years 1988 through 1993 as "assessments pending" in the amount of $686,267.15.  (*See* Doc. I.D. No. 536 ¶ 6, 542 at 15.)

7B.   The Debtor claims that his filed tax returns for the years 1988 through 1993 report zero income taxes and $2,967 in self-employment tax for 1993 and that he filed his tax returns for the years 1988 through 1992 in March 1994.  (*See* Doc. I.D. No. 536 ¶¶ 7 and 8; *but see* Doc. I.D. No. 542 at 15.)

7C.   The Debtor claims that his Master Tax Transcripts show that the applicable statute of limitations had expired prior to the Debtor's filing for relief under chapter 13 on December 19, 1997.  (*See* Doc. I.D. No. 536 ¶ 9; *but see* Doc I.D. No. 542 at 15-16.)

7D.   The tax claims asserted in the 1998 Proof of Claim for general unsecured claims for tax years 1988 through 1993 in the amount of $686,267.15 had never been assessed, and no Notices of Deficiency had ever been mailed to the Debtor.  (*See* Doc. I.D. Nos. 536 ¶ 10, 542 at 16.)

7E.   The IRS asserted the alleged general unsecured claims for tax years 1988 through 1993 in proceedings before this court held on November 29, 2000 and January 4, 2001 in connection with the IRS Motion To Convert.  (*See* Doc. I.D. Nos. 536 ¶ 11, 542 at 16-17.)

7F.   The Debtor claims that the tax claims asserted for tax years 1988 through 1993 in the 1998 Proof of Claim are identical to certain allegedly "altered" claims on the

Taxpayer's Master Transcripts, as prepared by IRS Special Procedures.  (*See* Doc. I.D. No. 536 ¶ 13; *but see* Doc. I.D. No. 542 at 17-18.)

7G.  The Debtor claims that the IRS asserted false tax claims before this court for tax years 1988 through 1993 in the 1998 Proof of Claim.  (*See* Doc. I.D. No. 536 ¶ 14; *but see* Doc. I.D. No. 542 at 18.)

7H.  The IRS also filed a proof of claim (the "2000 Proof of Claim") dated November 22, 2000 in the 2000 Case.  In the 2000 Proof of Claim, the IRS asserted unsecured general claims amounting to $1,087,420.99 for tax years 1988 through 1996.  On the 2000 Proof of Claim, the claims for tax years 1988 through 1993 were listed as "assessments pending," the claim for tax year 1995 as "assessed," and the claim for tax years 1994 and 1996 as "estimated."  (*See* 2000 Case Proof of Claim No. 6.)

7I.  The Debtor claims that the tax claims for tax years 1988 through 1993 were prohibited from assertion in any court for collection pursuant to 26 U.S.C. §§ 6212, 6213, and 6501, and were based upon allegedly altered Master Tax Transcripts of the Debtor.  (*See* Doc. I.D. No. 536 ¶¶ 12, 16; *but see* Doc. I.D. No. 542 at 17-19.)

7J.  The Debtor claims that the tax claims for tax years 1988 through 1993 (which the Debtor claims were false claims) were also asserted by the IRS in hearings before this court on November 29, 2000 and January 4, 2001.  (*See* Doc. I.D. No. 536 ¶ 17; *but see* Doc. I.D. No. 542 at 19.)

7K.  The total unsecured general claims, amounting to $1,087,420.99, appearing in the 2000 Proof of Claim were asserted by the IRS before this court (the Debtor claims) to defeat plan feasibility of the Chapter 13 Debtor.  (*See* Doc. I.D. No. 536 ¶ 18; *but see* Doc. I.D. No. 542 at 19.)

7L.  Prior to his entry into the Stipulation (and this court's approval of the same), the Debtor asserted to this court that the IRS had *no* valid tax claims against him. (*See* Doc. I.D. No. 164 (Debtor's Opposition to IRS Motion To Convert dated March 21, 2001) at 3-11;[18] Doc. I.D. No. 150 (transcript of 1/4/01 hearing) at 46:1-13[19].)

---

[18]     *See, e.g., id.* at 10 ("[T]he IRS has no statutory basis in a United States Tax Court to assert a single claim for a single tax dollar of liability!").

[19]        So, I'm only asking for the opportunity to stay within this [chapter] 13.  Let's get to the truth.  I want the truth from the IRS as much as they want mine.  I find it very interesting that – they they've never answered the question are there [sic] proof of claim statements for 1988 through 1992, alleging the amounts they did, $800,000.00 or so. Is it in fact accurate that there's been never a notice of deficiency, and

8.  On May 31, 2001, the Debtor, the IRS, and the DRS entered into the Stipulation which, among other things, provided for the conversion of this case from chapter 13 to chapter 11, and the Sale, pursuant to § 363, of the Property, with the Mortgage to be satisfied, but with the portion of the Mortgage repayment that would otherwise be distributed to CIIC (with Mr. Waters having the right to most of that distribution under his contract with CIIC), to be escrowed for certain purposes.  (Doc. I.D. Nos. 529 ¶ 8, 535 at 8-11.)

8A.  The Stipulation was entered into on May 31, 2001 by the Debtor and the IRS in relevant part in settlement of the IRS Motion To Convert.  (*See* Doc. I.D. Nos. 170 (recitals) and related docket entry for June 1, 2001); 180 (order dated July 16, 2001 approving the Stipulation).)

9.  Consistent with the Stipulation, the Property was sold in a Sale approved by this Court pursuant to Bankruptcy Code § 363.  The Sale resulted in proceeds, net of adjustments, of $2,077,922.  Property taxes of $124,793 (*i.e.,* the Property Taxes) were paid directly from the proceeds of the Sale.  The balance ($1,953,129) was paid with respect to the Mortgage, but did not fully satisfy the Mortgage balance of $1,988,273 that was then owed.  (Doc. I.D. Nos. 529 ¶ 9, 533 ¶ 9.)

10.  The amount paid with respect to the Mortgage included $1,224,042 in accrued interest (*i.e.,* the Mortgage Interest).  (Doc. I.D. Nos. 529 ¶ 10, 533 ¶ 10.)

11.  The amount paid to CIIC but (pursuant to the Stipulation) paid into the Escrow, after paying off Tuthill, was $1,287,206.  (Doc. I.D. Nos. 542 at 7-8, 535 at 11.)

11A.  CIIC declared wages payable to the Debtor from investment banking revenues which it received from the Dean 40 transaction and in turn, CIIC then secured its obligation to the Debtor with an assignment to him of its interest under its loan agreement with Dean 40.  (Doc. I.D. Nos. 542 at 7-8, 535 at 11.)

---

is it accurate that the statute of limitations has run, and is it accurate that my filed returns show tax zero.  If that's the case they've filed a misstatement of material fact here, that led directly to and would have pushed my property through foreclosure, without any available interest to the estate that would be necessary here.

(*Id*. (testimony of the Debtor).)

11B.  On or about October 26, 2001, Dean 40 assigned its rights with respect to the Mortgage to CIIC which, on the same day, assigned those rights to the Debtor.  (Doc. I.D. No. 487, Exhibit III at tab 14.)[20]

12.   Among the expenses to be paid from the Escrow funds pursuant to the Stipulation were certain legal fees and accounting fees.  As described below, some of those professional fees expenses were subsequently allowed by the Court by subsequent orders, and thereupon distributed from the Escrow.  (Doc. I.D. Nos. 529 ¶ 12, 535 at 11-16.)

13.  The Debtor filed his initial individual income tax return for 2001 in October of 2002, claiming a refund, which he thereafter twice amended, claiming larger refunds.  He included the $1,287,206 that had been escrowed, as part of a slightly larger figure (i.e., $1,356,340.00) listed as "foreign wages," on the Personal Return.  (Doc. I.D. Nos. 542 at 9 and 13-14, 535 at 16-17.)[21]

14.  The Debtor deducted on his initial individual income tax return for 2001 the $1,224,042 in Mortgage Interest paid to Dean 40 (from the proceeds of the Sale) on Schedule A as ordinary mortgage interest.  When he amended that return (including the Personal Return), he instead included that item on Schedule C ("Profit or Loss from Business"), listing his own name as the business name.  (Doc. I.D. Nos. 529 ¶ 14, 535 at 17-18, 542 at 10.)

15.  The Debtor also deducted, on Schedule A of the Personal Return, the Property Taxes in the amount of $124,793 paid from the proceeds of the Sale.  (Doc. I.D. Nos. 529 at ¶ 15, 533 ¶ 15.)

16.  On the Personal Return, the Debtor also reported the Professional Fees as Schedule C expenses.  Some of the Professional Fees have been paid from the Escrow.  The Debtor also asserts the right to claim as Schedule C expenses additional amounts not yet paid from the Escrow that he claims should be paid from the Escrow – i.e., additional attorney's fees claimed by Mr. Charmoy, for example.  The Debtor's

---

[20]      The IRS admits the authenticity of the Debtor's documents.  One or both of those assignments may have been collateral assignments, rather than absolute assignments.

[21]      See note 17 to fact number 4.

response to the Tax Determination Motion lists $182,473 in payments from the Escrow (the dates of the court orders authorizing the payments appear in footnotes below):

(a)  $ 74,733 to KPMG to prepare financial reports for CIIC;[22]
(b)     68,248 to Ira Charmoy for legal fees;[23]
(c)     22,599 to Ernest Honecker for legal fees;[24]
(d)      8,643 to Ellery Plotkin for legal fees;[25]
(e) <u>    8,250</u> to the U.S. Trustee.[26]
     $182,473

The Debtor also claims the right to deduct $5,000 paid to Francis Conrad for legal fees from his own funds and the Debtor claims the right to deduct more "unpaid" legal fees to "tax counsel" whom he does not identify.  (Doc. I.D. Nos. 529 ¶ 16, 535 at 18, 542 at 11-12.)[27]

---

[22]     $10,000 retainer paid in 2001; $50,000 granted 4/25/02 (Doc. I.D. No. 247); $14,733 granted 10/29/03 (Doc. I.D. No. 378).

[23]     $17,000 paid in 2001 ($15,000 + $2,000); $9,031 granted 6/12/02 (Doc. I.D. No. 254); $10,344 granted 10/23/02 (Doc. I.D. No. 272); $10,841 granted 4/2/03 (Doc. I.D. No. 313); $21,032 granted 8/27/03 (Doc. I.D. No. 361).

[24]     Granted 10/23/02 (Doc. I.D. No. 273).

[25]     Granted 4/23/03 (Doc. I.D. No. 323).

[26]     Granted 11/13/02 (Doc. I.D. No. 278).

[27]     The IRS has stipulated to the inclusion on the Personal Return of certain of the Professional Fees as follows:

•     KPMG fees - any fees paid or billed during calendar year 2001 are properly taken on Schedule C of the Personal Return as expenses of CIIC's investment banking business.  (*See* Doc. I.D. Nos. 567 (transcript of 5/1/2007 oral argument) at 3:19-25 (remarks of Attorney Sklarew), 543 at 2.)

•     Attorney Charmoy's fees - $17,000.00 paid from the Escrow were properly included on Schedule A of the Personal Return (subject to the limitations of I.R.C. § 212).  (*See* Doc. I.D. Nos. 567, *supra* at 4:10-24 (remarks of Attorney Sklarew), 528 at 9.)  (The Debtor continues to claim all of Attorney Charmoy's fees as properly included on Schedule C of the Personal Return.)

- 13 -

17.  The IRS audited the Personal Return  and issued the Deficiency Notice.  That notice disallowed the adjustments and/or deductions claimed in the Personal Return for the Mortgage Interest, the Property Taxes, and the Professional Fees paid from the Escrow.  (Doc. I.D. No. 487, Exhibit II.)

18.  The Mortgage Interest and the Property Taxes were paid by the Estate from the Sale Proceeds.  The IRS claims that the Sale Proceeds were property of the estate and thus the Mortgage Interest and the Property Taxes are properly claimed by the Estate and not by the Debtor individually.  (*See* Doc. I.D. Nos. 529 ¶ 18, 535 at 19-20, 542 at 12-13.)

19.  In disallowing the deduction for the Professional Fees in the Personal Return, the IRS concluded that the funds in the Escrow that were used to pay those fees were property of the estate as well – a conclusion that the United States does not rely upon in its motion for partial summary judgment.  (*See* Doc. I.D. Nos. 529 ¶ 19, 535 at 20, 542 at 13.)

20.  The Debtor claims that the Professional Fees properly are claimed as a business expense of CIIC pursuant to 26 U.S.C. § 162(a), and that the Mortgage Interest claimed in Schedule C properly is claimed as a business expense of the Debtor pursuant to 26 U.S.C. § 162(a).  (*See* Doc. I.D. No. 536 ¶ 19, Doc. I.D. No. 542 at 19.)[28]

## IV.  __BURDEN OF PROOF__

Under Bankruptcy Code § 505, "the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax . . . .  11 U.S.C.A. § 505(a)(1) (West 2005).  "[I]n the absence of modification expressed in the Bankruptcy Code the burden of proof on a tax claim in bankruptcy remains where the substantive tax law puts it."  *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 26 (2000).  In this case, the relevant standard of proof is provided for in

---

•    Attorney Plotkin's fees - $8,643.00 in those legal fees were paid from the Escrow but, under the relevant loan documents to which CIIC was a party, the IRS does not deem that portion of the Escrow to have reached the Debtor as income in taxable year 2001.  (*See* Doc. I.D. No. 585 (transcript of 8/2/2007 hearing at 18:20-24, 36:2 – 38:6 (remarks of Attorney Sklarew).)

[28]      The Debtor appears to adhere to his position that the Property Taxes properly were claimed as deductions pursuant to 26 U.S.C. § 212 ("Expenses for production of income").

26 U.S.C. § 7491.[29]   Under that provision, the burden of proving entitlement to deductions and/or adjustments initially falls on the taxpayer.  *See U.S. Internal Revenue Service v. Official Committee of Unsecured Creditors (In re Industrial Commercial Electrical, Inc.)*, 319 B.R. 35, 51-52 (D. Mass. 2005).  *See also In re Harvard Industries, Inc.*, 352 B.R. 613, 619 (Bankr. D. N.J. 2006) ("The burden of clearly showing the right to the claimed deduction is on the party claiming the deduction.").  Upon the presentment of "credible evidence" relating to any factual issues, the burden switches to the government. *See Nis Family Trust v. Commissioner of Internal Revenue*, 115 T.C. 523, 538 (2000).

As noted above, the burden is on the movant to show that there are no genuine issues of material fact to preclude judgment as a matter of law.  In light of the Uncontested Facts, the court determines that there are no genuine issues of material fact and the court is left only with disputed

---

[29]    That provision provides:

**(a) Burden shifts where taxpayer produces credible evidence.–**
    **(1) General rule.–** If, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed . . . , the Secretary shall have the burden of proof with respect to such issue.
    **(2) Limitations.–** Paragraph (1) shall apply with respect to an issue only if–
        **(A)** the taxpayer has complied with the requirements under this title to substantiate any item; [and]
        **(B)** the taxpayer has maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews . . . .
                                        . . .
**(c) Penalties.–** Notwithstanding any other provision of this title, the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty, addition to tax, or additional amount imposed by this title.

26 U.S.C.A. § 7491 (2008).

legal issues, which will be decided by the court.  Consequently, "[s]ince there remain only legal

issues, burden of proof, and, therefore, section 7491, are irrelevant." *Nis Family Trust*, *supra* at 538.

## V.     ANALYSIS (MORTGAGE INTEREST AND PROPERTY TAXES ONLY)

### A.     Property of the Estate

The parties agree that the Mortgage Interest and the Property Taxes were paid from the Sale

Proceeds.  The IRS argues that the Debtor cannot claim adjustments/deductions on the Personal

Return for the Mortgage Interest and the Property Taxes because those items were paid from the Sale

Proceeds which were property of the estate within the purview of Bankruptcy Code § 541.  Leaving

the Affirmative Defense aside for the moment (it is discussed in part V.B, below), the court agrees

for the reasons set forth immediately below.

When a "two taxable entities" situation exists pursuant to I.R.C. § 1398, if items such as

mortgage interest and property taxes are paid from property of the estate, any tax adjustments/

deductions for such items properly are taken by the chapter 11 estate, not the debtor individually.

*Catalano v. Commissioner of Internal Revenue,* 279 F.3d 682 (9th Cir. 2002); *Bergman v.

Commissioner of Internal Revenue,* 49 T.C.M. (CCH) 1578 (1985).  "Property of the estate" is

defined by Bankruptcy Code § 541 which provides in relevant part as follows:

> (a)  The commencement of a case under section 301, 302, or 303 of this title creates an estate.  Such estate is comprised of all the following property, wherever located and by whomever held:
>
> > (1) [A]ll legal or equitable interests of the debtor in property as of the commencement of the case.
> >
> > . . .
> >
> > (6)  Proceeds, product, offspring, rents, or profits of or from property of the estate . . . .

- 16 -

11 U.S.C.A. § 541(a) (West 2005).  It is undisputed that the Debtor owned the Property when he commenced this case in 1997.  Accordingly, upon the commencement of the case, pursuant to Bankruptcy Code § 541(a)(1), the Property became property of the estate.  The Property remained property of the estate until it was sold pursuant to the Sale Order.[30]  That sale produced the Sale Proceeds which themselves became property of the estate pursuant to Bankruptcy Code § 541(a)(6). The Mortgage Interest and the Property Taxes were paid from the Sale Proceeds.  Therefore, the challenged tax adjustment/deduction can be taken only by the Estate and cannot be taken by the Debtor.

The Debtor argues that the Property ceased to be property of the estate (*i.e.,* effectively was sold) when he "accepted" the "Offer To Purchase" the Property during the chapter 13 phase of the case.  (*See* Doc. I.D. No. 487 Exhibit IV, tab 4 ("Offer To Purchase" signed "accepted" by the Debtor on April 25, 2001 (the "Accepted Offer")).)  Although the Debtor does not use the term "equitable conversion," that is the theory that he is arguing.  Under the (Connecticut) state law doctrine of "equitable conversion," a binding sales agreement passes equitable title to the real property to be sold upon execution of the agreement.  *See Francis T. Zappone Co. v. Mark,* 197 Conn. 264, 268 (1985).  Further, "[t]he vendor's interest . . . [in the subject real property then] is in the unpaid purchase price . . . ."  *Cooper v. Polayes,* 19 Conn. Sup. 353, 355 (Conn. Super. Ct. 1955).

---

[30]     Once property (other than an executory contract) becomes property of the estate, it leaves the estate only by one of three mechanisms: by sale or lease pursuant to Bankruptcy Code § 363; by abandonment pursuant to Bankruptcy Code § 554; and by exemption pursuant to Bankruptcy Code § 522.  The Debtor did not exempt the Property.  (*See* Doc. I.D. No. 1 (Schedule C - Property Claimed Exempt).)  Except for the Sale, none of the other foregoing events occurred here either.

- 17 -

As an initial matter, the court doubts that the state law doctrine of equitable conversion could have removed the Property from the bankruptcy estate, at least at a time when the Accepted Offer (assuming that the Accepted Offer otherwise would suffice as a "binding sales agreement") had not been approved by this court.  However, it is unnecessary to decide the foregoing issue.  That is because, even under the Debtor's theory, the Sale Proceeds still constitute proceeds of the Property (*see Cooper, supra*) and, thus, were property of the estate under Bankruptcy Code § 541(a)(6).

The Debtor argues that he, individually, sold the Property (rather than in his capacity as representative of the Estate as debtor in possession) and thus, he further argues, he (and not the Estate) is the proper entity to have taken the challenged adjustment/deduction.  The Debtor points to the fact that he did not designate himself as "debtor in possession" in the Sale Motion nor was he so designated in the Sale Contract or the Sale Order.[31]  Further, the Debtor points to the fact that the Sale Order authorized him to convey the Property by Warranty Deed rather than by Trustee's Deed,

---

[31]      The Debtor also points to the fact that he signed that contract with no indication of fiduciary status and with his own social security number as an identifier.

and he did so convey the Property.[32]  (*See* Doc. I.D. No. 215, Exhibit A § VII; Doc. I.D. No. 487,

Exhibit IV, tab 17.)

The Debtor has conceded that the Property was sold pursuant to Bankruptcy Code § 363.[33]

That concession is fatal to his argument because only a trustee (or debtor in possession) can sell

property of the estate pursuant to Sections 363(b) and (f) by their respective plain meanings.  *See*

11 U.S.C. § 363(b) ("The trustee, after notice and a hearing, may use, sell or lease, other than in the

---

[32]        Section 47-36d of the Connecticut General Statutes provides as follows:

A deed following the form entitled "Warranty Deed", when duly executed, has the
force and effect of conveying title in fee simple to the grantee, with covenants on the
part of the grantor to the grantee, for himself and for his heirs, executors and
administrators, (1) that at the time of delivery of the deed he is lawfully seized in fee
simple of the granted premises, (2) that the granted premises are free from all
encumbrances except as therein set forth, (3) that he has good right, full power and
lawful authority to sell and convey the same to the grantee and (4) that the grantor
shall, and his heirs, executors and administrators shall, warrant and defend the
granted premises to the grantee and his assigns forever against the claims and
demands of all persons, except as therein set forth.

Conn. Gen. Stat. Ann. § 47-36d (West 2007).  Section 47-36s of the Connecticut General Statutes
provides as follows:

A deed following the form entitled "Trustee's Deed", when duly executed, has the
force and effect of conveying to the grantee the fee simple title which the trustee has
pursuant to authority given in the trust instrument or by law with covenants that
(1) the trustee is duly qualified to act as trustee, (2) the trustee has full power and
authority as trustee to bargain and sell the described premises in manner and form as
set forth, and (3) the trustee and the trustee's successors shall warrant and defend the
granted premises against all claims and demands of any person claiming by, from or
under the trustee.

Conn. Gen. Stat. Ann. § 47-36s (West 2007).  Section 47-36s did not come into effect until 2003,
but it still is useful here for purposes of comparison to Section 47-36d.

[33]        The Property was sold pursuant to Bankruptcy Code § 363(b), and sold free and clear
of interests  pursuant to Bankruptcy Code § 363(f).

ordinary course of business, property of the estate . . . . "); 11 U.S.C. § 363(f) ("The trustee may sell

property under subsection (b) . . . of this section free and clear of any interest in such property of an

entity other than the estate . . . . "). *See also Central State Bank v. McCabe (In re McCabe),* 302 B.R.

873, 877 (Bankr. N.D. Iowa 2003) ("[O]nly a trustee is entitled to utilize the Bankruptcy Code to sell

property free of liens."); *In re Calvary Temple Evangelistic Assoc.,* 47 B.R. 520, 525 (Bankr. D.

Minn. 1984) ("[T]he exercise of § 105 powers to make an Order empowering the Creditors'

Committee to effectuate a § 363(b) sale would not be consistent with the provisions of the

Bankruptcy Code.").   Neither that the Debtor did not designate himself as "debtor in possession" in

the Sale Motion nor was he so designated in the Sale Contract or Sale Order (nor the fact that the

Debtor used his social security number as an identifier and did not indicate any fiduciary status)

alters the statutory mandate of Section 363 because the Debtor's debtor in possession capacity was

implicit in the concept of a Section 363 sale.[34]   Nor does the fact that a Warranty Deed was

authorized and used compel a different conclusion.   Warranty deeds are sometimes used in Section

363 sales, *see, e.g., Wildridge, LLC v. Pope,* 332 B.R. 454 (N.D. Ala. 2005) (property sold pursuant

to a plan and Section 363 by warranty deed).[35] The Sale Order may have authorized the Debtor to

use a form of conveyance that arguably might have been inappropriate, but that does not make the

---

[34]    The Stipulation contemplated that the Property be sold during the chapter 11 phase of the case pursuant to Section 363(b).  (*See* Doc. I.D. No. 180.)  As discussed above, that could be accomplished only by the debtor in possession.  Moreover, the order approving the Stipulation was not itself a Section 363 order.

[35]    The court here neither approves nor disapproves that practice.

- 20 -

Sale any less a Section 363 sale by a debtor in possession.[36]  In any event, the "property of the estate"

analysis discussed above is dispositive here.

Finally, the Debtor argues that he must be permitted to take the challenged items on the

Personal Return because, he claims, he was personally liable in respect of the Mortgage.  That is

because, the Debtor further claims, he purported to reinstate his personal liability on the subject note

shortly before the Sale closing.  (*Cf.* Doc. I.D. No. 487, Exhibit III, tab 13 (the "Reinstatement

Document").)  That argument is irrelevant because, for the reasons set forth above, the dispositive

fact is that the challenged items were paid from the Sale Proceeds.  Moreover, the Debtor's personal

liability in respect of the Mortgage was discharged in the 1991 Case.  The Debtor did not enter into

the Reinstatement Document prior to entry of the 1991 Discharge.  Accordingly, pursuant to

Bankruptcy Code § 524(c), the Reinstatement Document is void and unenforceable and the Debtor's

personal liability with respect to the Mortgage was discharged in the 1991 Case.  *See In re Collins,*

243 B.R. 217 (Bankr. D. Conn. 2000).[37]

---

[36]    The Debtor argues that the foregoing analysis is precluded by Bankruptcy Code
§ 363(m) ("The reversal or modification on appeal of an authorization under subsection (b) or (c) of
this section of a sale or lease of property does not affect the validity of a sale or lease under such
authorization to an entity that purchased or leased such property in good faith . . . .").  That argument
is inapposite.  The Sale to the purchaser is not under attack here; what is being adjudicated here is
the tax consequences of the Sale on the Debtor (and the Estate).

[37]    The Debtor argues that Section 524(c) does not apply to the Mortgage debt because
such debt is secured debt and thus is not "dischargeable" within the purview of Section 524(c).  It
is true that the Mortgage debt as an *in rem* obligation was not dischargeable.  However, the Mortgage
debt as the personal liability of the Debtor was dischargeable and was, in fact, discharged in the 1991
Case.  (*Cf.* Doc. I.D. No. 1 (attachments to Schedule D - Creditors Holding Secured Claims) (Debtor
asserting Discharge of such personal liability during chapter 13 phase of this case).)  If the Debtor's
statutory construction of Section 524(c) were correct, that would render nugatory Section
524(c)(6)(B) ("Subparagraph (A) shall not apply to the extent that such debt is a consumer debt
*secured by real property.*"  (emphasis added).)

### B.   Affirmative Defense

The Debtor argues that the IRS asserted the 1998 Proof of Claim and/or the 2000 Proof of

Claim with respect to the Motion To Convert[38] and, thus, the Debtor is, on one of the three theories

discussed below, entitled to be treated (for the purposes of the challenged adjustment(s)/deduction(s)

only) as if he still were in chapter 13.[39]  This court disagrees for the reasons set forth below and

concludes that the Debtor cannot prevail on the Affirmative Defense as a matter of law.

### 1.   Fraud on the Court

The court of appeals for this circuit has narrowly defined fraud on the court which
warrants the setting aside of a judgment as:

> "'that species of fraud which does or attempts to defile the court itself . . . so
> that the judicial machinery can not [sic] perform in the usual manner its
> impartial task of adjudging cases that are presented for adjudication.'"
> *Martina Theatre Corp. v. Schine Chain Theatres, Inc.,* 278 F.2d 798, 801 (2d
> Cir. 1960), quoting 7 J.W. Moore, Federal Practice, para. 60.33 at 512 (2d
> ed.).

*See Kupferman v. Consolidated Research & Mfg. Co.,* 459 F.2d 1072, 1078-1079 (2d
Cir. 1972); *Kenner v. Commissioner of Internal Revenue,* 387 F.2d 689, 691 (7th Cir.
1968); *Lockwood v. Bowles,* 46 F.R.D. 625, 631 (D.D.C. 1969).

Generally speaking, only the most egregious misconduct, such as bribery of a judge
or members of a jury, or the fabrication of evidence by a party in which an attorney
is implicated, will constitute a fraud on the court.  *See Hazel-Atlas Glass Co. v.
Hartford-Empire Co.,* 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944); *Root Refin.
Co. v. Universal Oil Products, . . .* 169 F.2d 514[3d Cir. 1948]; 7 J.W. Moore,
Federal Practice,  para. 60.33 at 510-11.  Less egregious misconduct, such as
nondisclosure to the court of facts allegedly pertinent to the matter before it, will not
ordinarily rise to the level of fraud on the court.  *See Kupferman v. Consolidated
Research & Mfg. Co., supra,* 459 F.2d 1072; *see also England v. Doyle,* 281 F.2d
304, 310 (9th Cir. 1960).

---

[38]    The Debtor claims that either the IRS knew those proofs of claim were false or filed
them in reckless disregard of the truth.

[39]    This subpart of the court's analysis also applies with respect to the Professional Fees.

*U.S. v. International Telephone & Telegraph Corp.,* 349 F.Supp. 22, 29-30 (D. Conn. 1972), *aff'd sub. nom. Nader v. United States*, 410 U.S. 919 (1973) (first alteration in original).  "Plainly the fact that false or misleading testimony was given during the course of a judicial proceeding does not constitute a fraud upon the court unless it appears that the court was so misled by such testimony as to render a decision based on a mistaken view of the material facts."  *Interstate Investors, Inc. v. U.S.,* 287 F.Supp. 374, 382 (S.D.N.Y. 1968), *aff'd,* 393 U.S. 479 (1969).  In this case, as a matter of law the court could not have been misled into converting the case to chapter 11 on the basis of the 1998 Proof of Claim and/or the 2000 Proof of Claim because the Debtor had made his opinion of those proofs of claim known to the court prior to his entry into the Stipulation.  (*See* Uncontested Facts ¶ ¶ 7L, 8, 8A.)  Accordingly, even assuming (but not deciding) that "fraud on the court" otherwise would apply, the court concludes that there was no "fraud on the court" here.[40]

## 2.    **Judicial Estoppel**

> A party invoking . . . [the] doctrine [of judicial estoppel] must show that (1) the party against whom judicial estoppel is being asserted advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner.

*U.S. v. Hussein,* 178 F.3d 125, 130 (2d Cir. 1999).  Here, the court acted pursuant to the agreement of the parties and in no sense adopted the subject proofs of claim.  (*See* Uncontested Facts, *supra.*)  Accordingly, assuming (but not deciding) that the doctrine of judicial estoppel otherwise would apply, the court concludes that the doctrine of judicial estoppel does not apply here.

---

[40]    The Debtor is time barred here by the one year bar of Rule 60(b) of the Federal Rules of Civil Procedure from asserting any fraud that would not constitute a "fraud on the court."  *See* Fed. R. Civ. P. 60(b) (made applicable here by Fed. R. Bankr. P. 9024).

### 3.    Equitable Estoppel

Equitable estoppel is applied "to the Government only in those limited cases where the party can establish both that the Government made a misrepresentation upon which the party reasonably and detrimentally relied and that the Government engaged in affirmative misconduct." *City of New York v. Shalala,* 34 F.3d 1161, 1168 (2d Cir. 1994). Here, as a matter of law the Debtor cannot be said to have relied upon the allegedly false proofs of claim because he raised the perceived problems with them before he entered into the Stipulation. (*See* Uncontested Facts, *supra.*) Accordingly, assuming (but not deciding) that the doctrine of equitable estoppel otherwise would apply, the court concludes that the doctrine of equitable estoppel does not apply here.

## VI.    CONCLUSION

For the reasons discussed above, the court (a) grants in part the Tax Determination Motion (Doc. I.D. No. 477) and the S/J Motion (Doc. I.D. No. 527), (b) overrules in part the Debtor's Tax Determination Objection (Doc. I.D. No. 487), the S/J Cross Motion (Doc. I.D. No. 534, to the extent that the same constitutes an objection to Doc. I.D. No. 527) and the Second Objection (Doc. I.D. No. 538) and (c) denies in part the S/J Cross Motion (to the extent the same constitutes a cross-motion), but all only to the extent that the court determines (1) that the Debtor (individually) is not entitled to claim an adjustment and/or deduction for either the Mortgage Interest or the Property Taxes with respect to tax year 2001 and (2) the Affirmative Defense does not apply with respect to the Mortgage

Interest, the Property Taxes or the Professional Fees.   The remainder of the above-captioned documents remains pending and the court will (by separate scheduling order) schedule a status conference to discuss with the parties "next steps" with respect to such documents.

**IT IS SO ORDERED.**

Dated: February 8, 2008                                                BY THE COURT

                                                                    **Lorraine Murphy Weil**
                                                          **United States Bankruptcy Judge**