Not for Publication

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 99-31833 |
| EDWARD J. WATERS, | ) | CHAPTER | 7 |
| DEBTOR. | ) | DOC. I.D. NOS. | 477, 487, 527, 534, 538 |

## APPEARANCES

| | |
|---|---|
| Ann M. Nevins, Esq.<br>Assistant U.S. Attorney<br>U.S. Attorney's Office<br>915 Lafayette Boulevard, Room 309<br>Bridgeport, CT 06604 | Attorney for Movant United States of America, Internal Revenue Service |
| Peter Sklarew, Esq.<br>Attorney, Tax Division<br>U.S. Department of Justice<br>P.O. Box 55<br>Washington, DC 20044 | Attorney for Movant United States of America, Internal Revenue Service |
| Edward J. Waters<br>Avalon Place<br>137 Hollow Tree Ridge Road, #1903<br>Darien, CT 06820 | *Pro Se* Debtor/Movant |
| Joan E. Pilver, Esq.<br>Assistant Attorney General<br>Attorney General's Office<br>Department of Revenue Services<br>55 Elm Street, 5th Floor<br>Hartford, CT 06106 | Attorney for State of Connecticut, Department of Revenue Services |
| Michael J. Daly, Esq.<br>Law Offices of Michael J. Daly, LLC<br>3 Forest Park Drive<br>Farmington, CT 06032 | Chapter 7 Trustee |

**MEMORANDUM OF FURTHER PARTIAL DECISION AND ORDER
GRANTING OPPORTUNITY TO SUPPLEMENT THE RECORD RE:
<u>MOTION FOR DETERMINATION OF TAX LIABILITIES</u>**

Lorraine Murphy Weil, United States Bankruptcy Judge

Before the court are the following (collectively, the "Contested Matter"): (a) United States' Motion Pursuant to Rule 9014 for Determination of Both the Estate's and the Debtor's Tax Liabilities Pursuant to § 505(a)(1) and Thereafter To Authorize Their Payment from the Escrow Account and/or by the Trustee (Doc. I.D. No. 477, the "Tax Determination Motion")[1]; (b) the above-referenced debtor's (the "Debtor") objection thereto (Doc. I.D. No. 487, the "Debtor's Tax Determination Objection"); (c) the United States' Motion for Partial Summary Judgment in § 505 Contested Matter To Determine Mr. Water's 2001-Year Tax Liabilities (Doc. I.D. No. 527, the "S/J Motion"); (d) Edward J. Waters' Cross-Motion for Partial Summary Judgment in § 505 Contested Matter To Determine Mr. Waters' 2001: Form 1040 Tax Liabilities (Doc. I.D. No. 534, the "S/J Cross Motion")[2]; and (e) the Debtor's "Second Objection": To IRS' Second Determination of 2001 Tax Liability and IRS Motion for Partial Summary Judgment (Doc. I.D. No. 538, the "Second Objection").

**I.    BACKGROUND**

By memorandum and order dated February 8, 2008 (Doc. I.D. No. 590 (as modified by Doc. I.D. Nos. 602 and 617, the "2/8/08 Decision")), this court rendered a partial decision with respect

---

[1]    Citations herein to the docket of this title 11 case appear in the following form: "Case Doc. I.D. No. ___." The movant with respect to the Tax Determination Motion hereinafter is referred to as the "IRS."

[2]    Although labeled strictly as a "cross-motion," the court deems the subject pleading also to be an objection to the S/J Motion.

to the Contested Matters. Familiarity with the 2/8/08 Decision (which hereby is incorporated by reference) is assumed.[3] In accordance with orders of this court (Doc. I.D. Nos. 591, 598, 604 and 614), additional oral argument with respect to the Professional Fees was had on May 1, 2008 and October 28, 2008.[4] The Contested Matters now are ripe for the partial disposition provided for herein.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate only if the pleadings and submissions . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *The Andy Warhol Foundation for Visual Arts, Inc. v. Hayes (In re Hayes),* 183 F.3d 162, 166 (2d Cir. 1999). *See also* Fed. R. Civ. P. 56(c) (made applicable here by Fed. R. Bankr. P. 7056). The movant bears the burden of establishing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case."). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322. The court must view all ambiguities and draw all reasonable inferences in the light most favorable to the nonmovant. *See Novak v. Blonder (In re Blonder)*, 246 B.R. 147, 150 (Bankr. D. Conn. 2000) (Krechevsky, J.)

---

[3] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to the same in the 2/8/08 Decision.

[4] A copy of a transcript of those proceedings appears in the docket as Doc. I.D. No. 621 (the "10/28/08 Transcript") and Doc. I.D. No. 601 (the 5/1/08 transcript).

(citation and internal quotation marks omitted). Ultimately, the role of the court is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Issues of material fact are those "that might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. An issue is genuine when it is "triable," that is, when reasonable minds could disagree on the result. *Cf. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. APPLICABLE LAW

#### A. Accrual

It is uncontested that, at all relevant times, the Debtor was a cash basis taxpayer using the calendar year as his tax year. However, it also is uncontested that the relevant Schedule C expenses are taken (if at all) on an accrual basis. The law in respect of accrual is concisely stated in Rev. Rul. 2007-3, 2007-4 I.R.B. 350 (2006) as follows:

> [26 U.S.C. § ]461(a) provides that the amount of any deduction or credit must be taken for the taxable year that is the proper taxable year under the method of accounting used by the taxpayer in computing taxable income.
>
> Section 1.461-1(a)(2)(i) of the Income Tax Regulations provides that, under an accrual method of accounting, a liability is incurred, and is generally taken into account for federal income tax purposes, in the taxable year in which (1) all the events have occurred that establish the fact of the liability, (2) the amount of the liability can be determined with reasonable accuracy, and (3) economic performance has occurred with respect to the liability (the "all events test"). *See also* § 1.446-1(c)(1)(ii)(A).
>
> The first prong of the all events test requires that all the events have occurred that establish the fact of the liability. Therefore, it is fundamental to the all events test that although expenses may be deductible before they become due and payable, liability first must be firmly established. *United States v. General Dynamics Corp.,* 481 U.S. 239, 243-4 (1987).
>
> Generally, under § 1.461-1(a)(2), all the events have occurred that establish the fact of the liability when (1) the event fixing the liability, whether that be the required

> performance or other event, occurs, or (2) payment therefore is due, whichever happens earliest. Rev. Rul. 80-230, 1980-2 C.B. 169; Rev. Rul 79-410, 1979-2 C.B. 213, *amplified by* Rev. Rul. 2003-90, 2003-2 C.B. 353. The terms of a contract are relevant in determining the events that establish the fact of a taxpayer's liability. *See, e.g., Decision, Inc. v. Commissioner,* 47 T.C. 58 (1966), *acq.*, 1967-2 C.B. 2.
>
> Section 461(h) and § 1.461-4 provide that, for purposes of determining whether an accrual basis taxpayer can treat the amount of any liability as incurred, the all events test is not treated as met any earlier than the taxable year *in which economic performance occurs with respect to the liability.*
>                                                        . . .
> Section 1.461-5(b)(1) [promulgated under 26 U.S.C. § 461(h)(3)] provides a recurring item exception to the general rule of economic performance. Under the recurring item exception, a liability is treated as incurred for a taxable year if: (i) at the end of the taxable year, all events have occurred that establish the fact of the liability and the amount can be determined with reasonable accuracy; (ii) economic performance occurs on or before the *earlier* of (a) the date that the taxpayer files a return (including extensions) for the taxable year, or (b) the 15th day of ninth calendar month after the close of the taxable year; (iii) the liability is recurring in nature; and (iv) either the amount of the liability is not material or accrual of the liability in the taxable year results in better matching of the liability against the income to which it relates than would result from accrual of the liability in the taxable year in which economic performance occurs.

(Rev. Rul. 2007-3, 2007-4 I.R.B. 350 (2006) (emphasis added).[5]

### B.     "Business Expense" Deduction[6]

Section 162 of title 26 of the United States Code provides in relevant part as follows: "There shall be allowed as a deduction [on Schedule C] all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business . . . . " 26 U.S.C.A. § 162(a) (West 2009).

> Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the year in carrying on a trade or business . . . . To decide whether

---

[5]     The Debtor raised the "recurring item" exception for the first time at the October 28, 2008 oral argument.

[6]     This issue refers only to the Charmoy Fees and the Honecker Fees.

> an expense is deductible as a trade or business expense . . . , we look to the origin and character of the expense.

*Tarakci v. C.I.R.*, 80 T.C.M. (CCH) 727, 2000 WL 1727374, at *7 (U.S. Tax Ct. 2000) (*citing, inter alia, Woodward v. Commissioner,* 397 U.S. 572, 577 (1970); *United States v. Gilmore,* 372 U.S. 39, 48 (1963)).

> The Supreme Court . . . [applies] the "origin of the claim" test to determine whether litigation expenses may be deductible as business expenses. *See United States v. Gilmore,* 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963). Under the origin of the claim test, it is the origin and character of the claim for which litigation expenses are incurred, rather than the potential consequences upon the fortunes of the taxpayer, which determines whether an expense was "business" or "personal," and hence, whether it is deductible under Section 162 or Section 212. The "origin of the claim" test does not contemplate a mechanical search for the first in the chain of events which led to the litigation but, rather, requires an examination of all of the facts, including the kind of transaction out of which the litigation arose, the issues involved, the defenses raised, and other facts pertaining to the controversy which led to the lawsuit . . . . In applying the origin of the claim test, the proper focus is not upon the potential consequence of the litigation, but rather upon the origin and character of the controversy which led to the expenses . . . .

*Mires v. U.S.,* 372 F.Supp.2d 1265, 1275-76 (W.D. Okl. 2005), *aff'd*, 466 F.3d 1208 (10th Cir. 2006) (citations omitted).

Legal expenses incurred with respect to the taxpayer's personal bankruptcy are deductible under Section 162(a) only if the bankruptcy is "proximately related to his trade or business." *Tarakci,* 2000 WL 1727374, at *7. *See also United States v. Collins (In re Collins),* 26 F.3d 116 (11th Cir. 1994). If the bankruptcy was caused by the failure of the debtor's business or by a business dispute, bankruptcy legal fees may be deductible business expenses (in whole or in part). *See, e.g., Tarakci, supra* at *7 (bankruptcy legal expenses deductible, "[t]he origin of the [bankruptcy] . . . was . . . [debtor's] share of the liability for . . . a business in which the . . . [debtor] had a 50-percent interest. [The business'] . . . failure to pay rent forced . . . [the debtor] into seeking

bankruptcy protection."); *Cox v. C.I.R.,* 42 T.C.M. (CCH) 1229, 1981 WL 10940 (U.S. Tax. Ct. 1981) (bankruptcy caused by business failure; legal expenses deductible in part). *See also Scofield v. C.I.R.,* 74 T.C.M. (CCH) 1356, 1997 WL 760521, at *11 (U.S. Tax. Ct. 1997) ("Petitioner's bankruptcy legal expenses were attributable to his business or investment since Northeast's failure forced him to seek bankruptcy protection. The debts listed in his bankruptcy petition related almost exclusively to Northeast;" fees deductible "subject to the 2-percent limit in [26 U.S.C.] section 67."). *Cf. Mitchell v. C.I.R.,* 71 T.C.M. (CCH) 2972, 1996 WL 224984 (U.S. Tax Ct. 1996).[7]

If "ordinary and necessary" and if appropriately "paid," legal expenses incurred to collect wages are deductible under 26 U.S.C. § 212 (subject to statutory limitations). *See McKeague v. U.S.,* 12 Cl. Ct. 671 (1987), *aff'd,* 852 F.2d 1294 (Fed. Cir. 1988).

## IV.    ANALYSIS (PROFESSIONAL FEES)[8]

### A.    KPMG Fees

Some time prior to May 31, 2001, CIIC "retained KPMG to prepare financial statements of . . . [CIIC] for the years 1993 through 2000, such statements being necessary for the preparation of the Debtor's federal and State of Connecticut income tax returns . . . [in accordance with the

---

[7]     [The Commissioner] concedes that petitioners paid $3,000 to their bankruptcy attorney but contends that the amount is a personal expense because the purpose of the proceeding was to prevent foreclosure on petitioner's homestead. Petitioners have given us no basis for concluding that the bankruptcy attorney's fee was an ordinary and necessary business expense or for allocating the fee between personal services and business services.

*Id.*, 1996 WL 224984, at *4.

[8]     The fees for Ellery Plotkin, Esq. are the subject of a concession by the IRS set forth at note 27 on page 14 of the 2/8/08 Decision.

Stipulation]." (Doc. I.D. No. 180 at 2.) A $10,000.00 retainer was paid to KPMG sometime in 2001. (*See* Doc. I.D. No. 590 at 13 n.22.) By motion filed on March 28, 2002, the Debtor sought distribution from the Escrow in part "to continue to engage the services of KPMG to prepare the financial statements of CIIC . . . . In the absence of available funds for the continued retention of KPMG, the services of KPMG have been temporarily halted." (Doc. I.D. No. 245 at 8-9.) By stipulated order entered on April 25, 2002, the court granted Doc. I.D. No. 245 to a limited extent including that "counsel for the Debtor is hereby authorized to . . . set[] aside in a separate interest bearing account an additional distribution of $50,000 to be used by Edward J. Waters solely for the purpose of his retaining and paying a nationally recognized accounting firm to provide financial statements for . . . [CIIC]." (Doc. I.D. No. 247 at 2.)

By motion filed on September 23, 2003, the Debtor sought an additional distribution from the Escrow, "to pay the full and final remaining balance due KPMG, pursuant to the attached invoice amounting to $14,732.82." (Doc. I.D. No. 365 at 2.) Attached to that motion was only a one-page invoice (the "KPMG Invoice") addressed to CIIC (to the attention of "Mr. Edward Waters, Chairman, President and Chief Executive Officer") dated February 6, 2003 as follows:

| **FINAL BILLING** | US$ | US$ |
|---|---|---|
| **Professional Services rendered in connection with:** | | |
| Accounting for the years ended December 31, 1992 to 2002 | 63,4000.00 | |
| Received by wire on account | (50,000.00)[9] | |
| Balance due for Services: | | $13,400.00 |
| **Add out of pocket expenses** | | |
| Printing of financial statements | 1,048.51 | |
| Telephone and Faxes | 108.95 | |
| Taxi | 66.96 | |
| Postage (Federal express services for 31/01/03[10] & 06/02/03) | 74.37 | |
| Other expenses | 34.03 | |
| | | 1,332.82 |
| **Total Due** | **US$** | **14,732.82** |

The KPMG Invoice provides no information as to when KPMG had rendered "economic performance" to the Debtor other than it may have begun in 2001 and ended sometime prior to February 6, 2003. The motion was granted by order entered on October 30, 2003. (*See* Doc. I.D. No. 378.) The Debtor asserts an "adjusted" Schedule C deduction for the KPMG fees for the 2001 tax year in the aggregate amount of $68,232.82 (the "KPMG Fees"). (*See* 10/28/08 Transcript at 150:24-25, 151:1-2 (remarks of the Debtor).) The Debtor claims that all of the KPMG Fees were incurred in 2001 and are proper Schedule C expenses for 2001 without regard to when accounting

---

[9] The KPMG Invoice does not appear to account for the original $10,000.00 retainer.

[10] The KPMG invoice appears to have originated from an address in St. Vincent and the Grenadines. In the Caribbean, the date is written as day, month, year as opposed to month, day, year.

services were rendered (*i.e.*, without regard to the timing of "economic performance") under authority including the Section 461(h) "recurring item exception."  The IRS concedes that the KPMG Fees are a proper Section 162 deduction for tax year 2001 to the extent that such fees were paid or billed in 2001 (subject to proof of payment or "billing," the "KPMG Concession").[11]  (*See* Doc. I.D. No. 590 at 13 n.27 (the "Stipulation").)  However, the IRS asserts that (other than with respect to the KPMG Concession) it is entitled to summary judgment that the KPMG Fees are not proper 2001 Schedule C expenses on the grounds that they were not incurred during 2001 (including under the Section 461(h)(3) "recurring item exception").

Based upon the law discussed above, KPMG Fees arising from accounting services ("Last Accounting Services") rendered after September 15, 2002 are not proper Schedule C (or Schedule A) deductions for 2001.  (*See* 26 U.S.C. § 461.)  If the court were to proceed on the record as it now stands, the Debtor would not prevail on any other of the KPMG Fees (a) because there is no basis in the record for determining the dates of  "economic performance" (or payment or "billing") from the KPMG Invoice and (b) because (with respect to services rendered after December 31, 2001 but on or before September 15, 2002 ("Later Accounting Services")) the Debtor has not demonstrated why the Section 461(h)(3) "recurring item exception" (and the "all events test" as modified thereby) is otherwise met with respect to such services.

However, the Debtor has offered to supplement the record and the IRS has indicated that it would not object to giving the Debtor that opportunity.  Accordingly, on or before May 19, 2009, the Debtor may, consistent with Rule 56(e) of the Federal Rules of Civil Procedure submit (by filing

---

[11]  The court interprets "billed" as occurring when a charge against CIIC's account with KPMG was made in respect of KPMG's economic performance.

and service) his proof of the dates of "economic performance" for all the KPMG Fees (except for Last Accounting Services) and, with respect to Later Accounting Services, his proof of each element of Section 461(h)(3) (including the "all events test" as modified thereby but not including "reasonable period").[12] To the extent that the Debtor believes that such admissible evidence already is in the record, the Debtor may cite (precisely) as to where such evidence may be located in the record. The Debtor contemporaneously shall file a memorandum of law addressing his proof and why it is probative of the foregoing issues. The IRS may file a response on or before June 23, 2009.[13]

### B. Ira Charmoy Fees

The payment and allowance history for the Charmoy Fees through August 27, 2003 is set forth in Doc. I.D. No. 590 at page 13, note 23. On January 30, 2004, Attorney Charmoy filed a Fifth Interim Application for Allowance by Attorney seeking allowance of $19,834.00 in fees and $214.63 in expenses. (*See* Doc. I.D. No. 394.) That application was denied (by docket entry) as premature on March 10, 2004. Attorney Charmoy filed a Final Application for Allowance by Attorney (Doc. I.D. No. 449) on December 28, 2004 seeking final approval of all fees and expenses for which approval was sought in prior applications, and an additional $1,498.00 in fees and $350.84 in expenses, for a grand total of $90,145.47. The United States Trustee objected to that application by a pleading filed on June 16, 2006. (*See* Doc. I.D. No. 507.) A hearing on that application and the objection were marked "off" on July 26, 2006.

---

[12] What an earlier "reasonable period" might be is an issue for trial (if trial is an appropriate disposition).

[13] The foregoing schedule and procedure hereafter is referred to as the "Supplementation Procedure."

The Debtor asserts that fees for the services of Ira Charmoy, Esq. are proper Schedule C expenses for 2001 in the "adjusted" aggregate amount of $88,797.16 (the "Charmoy Fees"). (*See* 10/28/08 Transcript at 150:24-25, 151:1-3 (remarks of the Debtor).) The IRS asserts that none of the Charmoy Fees are proper Schedule C expenses for 2001 because those items were not business expenses. The following timeline is relevant:

- May 29, 2001 - CIIC declares wages[14] payable to the Debtor from investment banking revenues which it received from the Dean 40 transaction and in turn, CIIC then secured its obligation to the Debtor for wages with an assignment to him of its interest under its loan agreement with Dean 40. (*See* Doc. I.D. No. 590 at 11 (fact 11.A).)

- May 31, 2001 - Debtor and others enter into the Stipulation. (*See* Doc. I.D. No. 180.)

- July 16, 2001 - Case converted to chapter 11. (*See* Doc. I.D. No. 181.)

- July 25, 2001 - Attorney Charmoy retained as chapter 11 counsel (nunc pro tunc to July 19, 2001). (*See* Doc. I.D. No. 192.)

- September 6, 2001 - Sale Order entered. (*See* Doc. I.D. No. 215.)

- October 26, 2001 - Dean 40 assigns its rights with respect to the Mortgage to CIIC, CIIC assigns those rights to the Debtor and the Sale closes. (*See* Doc. I.D. No. 590 at 5 and 12 (fact 11.B.)

As noted in the 2/8/08 Decision, this case originated for two primary reasons: (a) saving the Debtor's home (*i.e.,* the Property) from foreclosure and (b) dealing with the Debtor's individual state and/or local tax liabilities. (*See* Doc. I.D. No. 590 at 3-4.) CIIC's business was not involved.

---

[14] The IRS concedes the "wages" issue only to a very limited extent. (*See* Doc. I.D. No. 590 at 8 n.17.)

Moreover, in his original petition filed on December 19, 1997, the Debtor admitted that his case was in respect of a "Non-Business/ Consumer." (*See* Doc. I.D. No. 1 at 1 ("Information Regarding Debtor").)  Accordingly, viewing Attorney Charmoy strictly as the Debtor's general bankruptcy counsel, the Charmoy Fees are nondeductible personal expenses and neither valid Schedule C nor Schedule A expenses for 2001.  *Cf. In re Collins,* 26 F.3d 116 (legal fees incurred by taxpayer to defend against objection to discharge action and to commence and defend against state court litigations were nonbusiness expenses that were not deductible); *Jack's Maintenance Contractors, Inc. v. C.I.R.*, 703 F.2d 154 (5th Cir. 1983) (because legal fees incurred by sole shareholder from defending against criminal charges were personal, deduction of such fees as business expenses by taxpayer was disallowed); *Baum v. United States,* 326 F.Supp. 32 (E.D. Wis. 1971) (legal fees and expenses incurred by taxpayer appealing an order denying discharge were personal expenses that were not deductible under Sections 162(a) or 212).

However, Attorney Charmoy was only the Debtor's chapter 11 counsel.  The origin of the chapter 11 phase of the case was primarily about collecting the Debtor's CIIC "wages" and the collection of the same.  Accordingly, to the extent that the Charmoy Fees were so derived (and were paid in 2001), the Charmoy Fees are deductible in 2001 pursuant to Section 212 (subject to statutory limitations).  The IRS has conceded that $17,000.00 in Charmoy Fees paid from the Escrow in 2001 are properly included on Schedule A of the Personal Return (subject to statutory limits for 2001).  (*See* Doc. I.D. No. 590 at 13 n.27.)[15]  If the Debtor believes that other of the Charmoy Fees were

---

[15] Mr. Waters and the IRS both concede that U.S. Trustee fees in the amount of $8,250 are properly deductible under Section 212 for the year 2002 (subject to statutory limitations).  (*See* 10/28/08 Transcript at 153:25, 154:1-15 (remarks of Attorney Sklarew and the Debtor).)

paid in 2001, the Debtor may supplement the record (and the IRS may respond) in accordance with the Supplementation Procedure.

### C.    Ernest Honecker Fees

Pursuant to an order dated July 25, 2001 (*see* Doc. I.D. No. 191) the Debtor "as debtor-in-possession . . . [was] authorized to employ and appoint Ernest Honecker as tax attorney nunc pro tunc to . . . [July 19, 2001] . . . to perform the services described on . . . [Doc. I.D. No. 188, the "Honecker Retention Application"] . . . at a fee [of $350.00 per hour] not to exceed $25,000.00."[16]

Attorney Honecker filed his Final Application for Compensation on September 19, 2002. (*See* Doc. I.D. No. 264, the "Honecker Fee Application.") The Honecker Fee Application sought "an award of $22,598.86 for services rendered from August 4, 2002 [sic] through July 31, 2002" ($22,400.00 for fees for services and $198.86 for expenses). (*See id.*)  Annexed to the Honecker Fee Application are copies of the relevant invoices (the "Honecker Invoices"). (*See id.*) Those invoices relate to services rendered by Attorney Honecker (a) prior to January 1, 2002 in the

---

[16]    The Honecker Retention Application described the contemplated services as follows:

    (a)    To prepare and file federal and state tax returns.

    (b)    To assist the [D]ebtor and his counsel in the preparation of any plan of reorganization.

    (c)    To consult with the Debtor, creditors, his attorney and others on accounting, tax and financial matters and to provide such other professional services as may be required.

Attorney Honecker's affidavit disclosed that "I have acted as tax attorney for the debtor since August 23, 2000." (Affidavit ¶ 2 (annexed to Doc. I.D. No. 188).)

aggregate amount of $11,888.86 and (b) from and after January 1, 2002 in the aggregate amount of $10,710.00.  (*See id.*)[17]

The IRS argues that the Honecker Fees are ripe for summary judgment as follows: (a) Honecker Fees for services rendered from and after January 1, 2002 did not accrue for tax purposes in 2001 and thus cannot be valid Schedule C adjustments for tax year 2001; and (b) the Honecker Fees related to nothing but the Debtor's personal tax preparation expenses and are neither valid Schedule C nor Schedule A expenses for 2001.  The court will take up each point in turn.

### 1. **Accrual**

Based upon the law set forth above, as a matter of law Honecker Fees relating to services rendered after September 15, 2002 cannot be taken as Schedule C adjustments for tax year 2001.  If the court were to proceed on the record as it stands now, the Debtor would not prevail as to services rendered after December 31, 2001 but on or before September 15, 2002.  However, the Debtor has offered to supplement the record and the IRS has indicated it would not object to giving the Debtor that opportunity.  Accordingly, the Debtor may supplement the record (and the IRS may respond) in accordance with the Supplementation Procedure.

### 2. **Business Expense**

The Debtor claims that the Honecker Fees constitute business expenses because they were, in whole or substantial part, incurred in connection with defending against or otherwise responding

---

[17] The Debtor also claims as a 2001 Schedule C adjustment for fees for services rendered after July 31, 2002 in the additional amount of $28,207.45 (for a total claimed 2001 Schedule C expense in the amount of $50,806.31 (the "Honecker Fees")) because (the Debtor claims), after Attorney Honecker filed the first amended returns, Attorney Honecker "had to get involved all over again with the amended returns that were [sic] recognition of CIIC financial statements that were included."  (2/28/08 Transcript at 151:2-16 (remarks of the Debtor).)

to IRS allegations of civil or criminal fraud and/or money laundering allegations. The Honecker Retention Application, the Honecker Fee Application and the Honecker Invoices do not establish that the Honecker Fees were anything but personal tax preparation expenses and the like (*i.e.,* there is no mention therein of civil or criminal fraud and/or money laundering allegations). However, the Debtor will be permitted to supplement the record (and the IRS may respond) in accordance with the Supplementation Procedure. The court reserves the broader issue of whether the Honecker Fees are business expenses to a time after the Debtor has the opportunity to supplement the record in accordance herewith.

**V.    CONCLUSION**

For the reasons (but only to the extent) set forth above, the S/J Motion is granted, the S/J Cross Motion is denied and the Second Objection is overruled.[18] The record may be supplemented by the Debtor (and the IRS may respond) in accordance with the Supplementation Procedure. The remainder of the Contested Matter remains pending. **IT IS SO ORDERED.**

Dated: April 16, 2009                                    BY THE COURT

*Lorraine Murphy Weil*
Lorraine Murphy Weil
United States Bankruptcy Judge

---

[18]    The court has considered the Debtor's remaining arguments and, to the extent inconsistent herewith, finds them inapposite or otherwise unpersuasive.