Not for Publication

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 99-31833 |
| | ) | | |
| EDWARD J. WATERS, | ) | CHAPTER | 7 |
| | ) | | |
| DEBTOR. | ) | DOC. I.D. NOS. | 245, 352 |

### **APPEARANCES**

| | |
|---|---|
| Edward J. Waters<br>35 Meeting House Road<br>Greenwich, CT 06831 | *Pro Se* Debtor/Movant |
| | |
| Ann M. Nevins, Esq.<br>Assistant U.S. Attorney<br>U.S. Attorney's Office<br>915 Lafayette Boulevard, Room 309<br>Bridgeport, CT 06604 | Attorney for United States of America,<br>Internal Revenue Service |
| | |
| Peter Sklarew, Esq.<br>Attorney, Tax Division<br>U.S. Department of Justice<br>P.O. Box 55<br>Washington, DC 20044 | Attorney for United States of America,<br>Internal Revenue Service |
| | |
| Joan E. Pilver, Esq.<br>Assistant Attorney General<br>Attorney General's Office<br>Department of Revenue Services<br>55 Elm Street, 5th Floor<br>P.O. Box 120<br>Hartford, CT 06106 | Attorney for State of Connecticut,<br>Department of Revenue Services |
| | |
| Richard M. Coan, Esq.<br>Coan Lewendon Gulliver & Miltenberger LLC<br>495 Orange Street<br>New Haven, CT 06511 | Chapter 7 Trustee |

**BRIEF MEMORANDUM AND ORDER
RE: INTERPRETATION OF DOC. I.D. NO. 245[1]**

Lorraine Murphy Weil, Chief United States Bankruptcy Judge

**WHEREAS,** on May 22, 2003, a hearing was held in the above-captioned matter with respect to that certain Debtor's Amended Motion for Distribution of Proceeds of Sale of His Residence (Doc. I.D. No. 245, the "Motion");

**WHEREAS**, at that hearing, the court heard oral arguments from counsel and requested the submission of post-hearing briefs (collectively, the "Briefs"). By order dated May 23, 2003 (*see* Doc. I.D. No. 330), the court specifically requested that the parties address in their respective Briefs the following question: "the correct interpretation of that certain stipulated order (*see* Doc. I.D. No. 170, the "Stipulation")[2] and, in particular, paragraph 12 ["Paragraph 12"] of the Stipulation (without regard to its enforceability [the "Interpretation Issue"]." The parties complied and the Briefs include Doc. I.D. Nos. 337 and 339;[3]

---

[1]    This decision is limited to the Interpretation Issue and does not dispose of any other issues with respect to the Motion (as hereafter defined).

[2]    The Stipulation was approved by the court by order dated July 16, 2001. (*See* Doc. I.D. No. 180.) A copy of the Stipulation is annexed thereto.

[3]    Familiarity with the Stipulation is assumed and all capitalized terms used but not defined herein shall have the meanings ascribed to the same in the Stipulation. Paragraph 12 provides as follows:

> The Debtor, Dean 40 and CIIC agree that to the full extent of their respective rights, if any, in the escrowed funds, said parties hereby subordinate such rights to the payment of taxes owed by Edward J. Waters to the IRS and [Connecticut] DRS.

(Doc. I.D. No. 170 at 8.) The status of the respective interests of Dean 40 and CIIC with respect to the escrowed funds is set forth in *In re Waters,* No. 99-31833, 2008 WL 384571, at *5-*6 (Bankr. D. Conn. Feb. 8, 2008) and in *In re Waters,* No. 05-3054, 2005 WL 3677968, at *2 n.8 (Bankr. D.

**WHEREAS,** the court reviewed the Briefs and certain other portions of the record in this case;

**WHEREAS,** after such review (and without deciding the issues raised in the Briefs which issues were reserved for trial) the court determined that a trial on all aspects of the merits of the Motion was the most appropriate procedure for adjudicating the Motion. Accordingly, on August 5, 2003, the court issued that certain Order Directing Submission of Proposed Amended Pre-Trial Order (Doc. I.D. No. 352, the "Prior Order") directing the above-referenced debtor (the "Debtor") to file and serve upon the other parties a proposed amended Pretrial Order (providing for a rescheduled trial date) for all aspects of the Motion;

**WHEREAS,** a Fourth Amended Pretrial Order (Doc. I.D. No. 421, the "Pretrial Order") in respect of the Motion was entered in this case on March 25, 2004 and provided (among other things) for a trial date "to be set by further Order;"

**WHEREAS,** at a hearing held on September 13, 2006, the court on the record continued the hearing on the Motion "without date." (*See* Oral Record of 9/13/2006 hearing at 4:33:42 *et seq.*);

**WHEREAS,** at a hearing held on September 16, 2009, the court indicated on the record that it would revisit the Prior Order and the Interpretation Issue but only with respect to whether an evidentiary hearing was required concerning the Interpretation Issue. (*See* Oral Record of 9/16/09 hearing at 12:28:43 *et seq.*);

**WHEREAS,** the court also has considered Doc. I.D. Nos. 494, 537 and the attachment to Doc. I.D. No. 544 and the entire record of this case;

---

Conn. Dec. 13, 2005). The Debtor (as hereinafter defined) controls CIIC in any event. For the purposes of convenience, the court herein will refer to the collective interests (if any) of the Debtor, Dean 40 and CIIC in and to the escrowed funds as the "Debtor's interests" in such funds.

**WHEREAS,** for the reasons set forth below the court has revisited the Prior Order and the Interpretation Issue and has determined that the Interpretation Issue can be, should be and hereinbelow is adjudicated without extrinsic or parole evidence.  The Prior Order hereby is reconsidered to that extent;

**WHEREAS,** the Stipulation is a contract, to be enforced under principles of contract law. *In re Royster Co.*, 132 B.R. 684, 687-88 (Bankr. S.D.N.Y. 1991).  *See also HLO Land Ownership Assocs. Ltd. P'ship. v. City of Hartford,* 248 Conn. 350, 356 (1999) ("[It is a] well established principle that . . . a stipulation of the parties is to be regarded and construed as a contract." (citation and internal quotation marks omitted));

**WHEREAS,**

> Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms . . . .  Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law . . . .  The court's determination as to whether a contract is ambiguous is a question of law . . . .
>
> "A contract is unambiguous when its language is clear and conveys a definite and precise intent . . . .  The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity . . . .  Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous . . . .
>
> "In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. [A]ny ambiguity in a contract must emanate from the language used by the parties . . . .  The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so."

*Russell v. Russell,* 95 Conn. App. 219, 222 (2006) (citations and internal quotation marks omitted; modifications in original).  When an ambiguous contractual term is at issue, the trial court can

examine extrinsic evidence to resolve questions of the parties' intent. *Rund v. Melillo,* 63 Conn. App. 216, 220 (2001);

**WHEREAS,** the relevant interpretation dispute between the Debtor and the taxing authorities is whether Paragraph 12 subordinates the Debtor's interests in the escrowed funds to payment of the Chapter 11 estate's liability for federal and state gains taxes (the "Gains Taxes") arising out of the sale of the Property by the debtor-in-possession during the Chapter 11 phase of this case;[4]

**WHEREAS,** taken alone, the language of Paragraph 12 may be ambiguous as to the intent of the parties with respect to whether the subordination provided for therein was to extend to the Chapter 11 estate's liability for the Gains Taxes even though the Debtor was not individually liable for them. However, as explained below, when analyzed in the context of the entire Stipulation, Paragraph 12 is not ambiguous in that regard and supports the position of the taxing authorities;

**WHEREAS,** the Debtor argues that the term the "Debtor" as defined in paragraph A of the Stipulation is limited to the Debtor in his capacity as a Chapter 13 debtor and does not include the Debtor in his capacity as a Chapter 11 debtor-in-possession. (*See* Doc. I.D. No. 537.) However, that interpretation would render many of the numbered paragraphs of the Stipulation nugatory because they contemplate actions by the debtor-in-possession. (*See, e.g.,* Doc. I.D. No. 170 ¶¶ 6, 7, 8, 9, 11.) The rule favoring interpretation which give effect to all provisions of the subject contract militates

---

[4] This case began as a Chapter 13 case, was converted to a Chapter 11 case by order dated July 16, 2001, and finally was converted to this Chapter 7 liquidation by order dated March 10, 2004. The Gains Taxes arose from a sale of the Property by the debtor-in-possession during the Chapter 11 phase of the case. *See Waters,* 2008 WL 384571, at *2; *Waters*, 2005 WL 3677968, at *2. Accordingly, the Gains Taxes are liabilities of the chapter 11 estate as administrative expenses, *cf. In re Bayly Corp.,* 163 F.3d 1205, 1210 (10th Cir. 1998), but are not liabilities of the Debtor individually. That point is not contested. *Cf. Waters,* 2008 WL 384571, at *2 (the Debtor and the Chapter 11 estate are two separate taxable entities).

against such a result. *See Russell, supra.* Accordingly, the court concludes that the term "Debtor" as used in the Stipulation includes the Debtor in his capacity as a Chapter 11 debtor-in-possession;

**WHEREAS,** the use of the term "Edward J. Waters" in Paragraph 12 may introduce some element of ambiguity into that paragraph. However, the paragraphs that follow Paragraph 12 delineate the consequences of the subordination provided for in Paragraph 12. (*See, e.g.,* Doc. I.D. No. 170 ¶ 14 ("Any additional taxes of the Debtor claimed to be due by the IRS and DRS as reflected on any filed administrative expense claims will also be paid out of the escrow account upon their allowance by the Court in accordance with applicable Bankruptcy Code provisions").) Those later paragraphs refer to the "Debtor" which, as explained above, also refers to the Debtor in his capacity as Chapter 11 debtor-in-possession. Accordingly, read in context, Paragraph 12 is not ambiguous and the taking of extrinsic evidence on its interpretation would not be appropriate;

**WHEREAS,** the Debtor also argues that parole evidence should be taken on the Interpretation Issue. (*See* Doc. I.D. No. 537 at 8-11.);

**WHEREAS,**

> the parol evidence rule is not a rule of evidence, but a substantive rule of contract law. *Security Equities v. Giamba*, 210 Conn. 71, 77-78, 553 A.2d 1135 (1989); *Damora v. Christ-Janer,* 184 Conn. 109, 113, 441 A.2d 61 (1981); *Cohn v. Dunn*, 111 Conn. 342, 346, 149 A. 851 (1930); see also 2 *Restatement (Second), Contracts* § 213, comment (a); 3 A. Corbin, . . . [*Contracts*] § 573; 4 S. Williston, . . . [*Contracts* (3d ed.)] § 631. The rule is premised upon the idea that "when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme." *Glendale Woolen Co. v. The Protection Ins. Co.*, 21 Conn. 19, 37 (1851).

> The parol evidence rule does not of itself, therefore, forbid the presentation of "parol evidence," that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only the *use* of such evidence *to vary or contradict the terms* of such a contract. Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant. When offered for that purpose, it is inadmissible not because it is parol evidence, but because it is irrelevant. By implication, such evidence may still be admissible if relevant "(1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement which does not vary the terms of the writing; (3) to add a missing term in writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud." *Jay Realty, Inc. v. Ahearn Development Corporation*, 189 Conn. 52, 55-56, 453 A.2d 771 (1983). These recognized "exceptions" are, of course, only examples of situations where the evidence (1) does not vary or contradict the contract's terms, or (2) may be considered because the contract has been shown not to be integrated; or (3) tends to show that the contract should be defeated or altered on the equitable ground that "relief can be had against any deed or contract in writing founded in mistake or fraud." *Noble v. Comstock*, 3 Conn. 295, 299 (1820); *see also Dale v. Gear*, 38 Conn. 15, 18-19 (1871) (agency, trust, equitable relation or equity may be shown by parol evidence).

*TIE Communications, Inc. v. Kopp,* 218 Conn. 281, 288-89 (1991) (emphasis in original; modifications added);

**WHEREAS,** as discussed above, Paragraph 12 is not ambiguous. Moreover, the Debtor sought (and obtained) this court's approval of the Stipulation. (*See* Doc. I.D. Nos. 171, 180.) The court relied upon the fact that the Debtor had submitted to the court the *entire* agreement of the parties with respect to the Stipulation. At this point, for the Debtor to argue otherwise is impermissible;[5]

**WHEREAS,** the Debtor argues (without citation to authority) that "a subordination has to be unambiguous and explicit to be binding," (Doc. I.D. No. 337 at 2). The court is not persuaded that such is the law. That is because the Debtor has not cited, and the court's own research has not

---

[5] The Debtor argues that he should be permitted to offer extrinsic evidence of fraud and duress. (*See* Doc. I.D. No. 537 at 10.) "Fraud and duress" are enforcement issues which are beyond the scope of this limited opinion. (*See* note 1, *supra.*)

located, any law in Connecticut embodying a "Rule of Explicitness" applicable to subordination agreements which would trump the general rules of contract interpretation set forth above.[6] *Cf. In re Bank of New England Corp.,* 364 F.3d 355, 364-66 (1st Cir.), *cert. denied*, 543 U.S. 926 (2004) (no generally applicable "Rule of Explicitness" under New York law).[7] Accordingly, the court concludes that the general rules of contract interpretation set forth above govern here.[8]

**NOW, THEREFORE,** for the reasons set forth above, it hereby is **ORDERED** that the Prior Order is reconsidered but only to the extent that the court concludes that Paragraph 12 properly is interpreted as set forth above, is not ambiguous and trial with respect to the Interpretation Issue would be inappropriate; and it is further

**ORDERED** that a status conference with respect to Doc. I.D. No. 245 hereby is scheduled for 2:00 p.m. on August 19, 2010 to consider "next steps;" and it is further

---

[6] For analytical purposes only, the court assumes (but does not decide) that the standard for ambiguity under any "Rule of Explicitness" is more stringent than the standard for ambiguity under the general contract rules set forth above.

[7] The Court of Appeals of New York has articulated a version of a "Rule of Explicitness." However, that "rule" is limited to subordination to claims for postpetition interest in bankruptcy. *See In re Southeast Banking Corp.*, 93 N.Y. 2d 178 (1999). *But see Bank of New England Corp., supra* (criticizing such limited state law "rule" as an inappropriate formulation of bankruptcy law in the guise of state law).

[8] The court has considered all of the Debtor's remaining arguments and find that such arguments otherwise are unpersuasive and/or inapposite.

**ORDERED** that the Clerk's Office shall cause a copy of this order to be served by this court's CM/ECF system (if applicable, otherwise by first-class mail) upon the Debtor, counsel for the Internal Revenue Service, counsel for the Connecticut Department of Revenue Services, the Chapter 7 Trustee and the United States Trustee.

Dated: July 23, 2010                                            BY THE COURT

*Lorraine Murphy Weil*
Lorraine Murphy Weil
Chief United States Bankruptcy Judge