Not for Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                              )
IN RE:                                        )    CASE NO.    99-31833
                                              )
  EDWARD J. WATERS,                          )    CHAPTER     7
                                              )
        DEBTOR.                              )    ECF NOS.    477, 487, 527, 534,
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -                         538

### APPEARANCES

| | |
|---|---|
| Edward J. Waters<br>Avalon Place<br>137 Hollow Tree Ridge Road, #1903<br>Darien, CT 06820 | *Pro Se* Debtor/Movant |
| Ann M. Nevins, Esq.<br>Assistant U.S. Attorney<br>U.S. Attorney's Office<br>915 Lafayette Boulevard, Room 309<br>Bridgeport, CT 06604 | Attorney for Movant United States of<br>America, Internal Revenue Service |
| Peter Sklarew, Esq.<br>Attorney, Tax Division<br>U.S. Department of Justice<br>P.O. Box 55<br>Washington, DC 20044 | Attorney for Movant United States of<br>America, Internal Revenue Service |
| Joan E. Pilver, Esq.<br>Assistant Attorney General<br>Attorney General's Office<br>Department of Revenue Services<br>55 Elm Street, 5th Floor<br>Hartford, CT 06106 | Attorney for State of Connecticut,<br>Department of Revenue Services |
| Richard M. Coan, Esq.<br>Coan Lewendon Gulliver & Miltenberger, LLC<br>495 Orange Street<br>New Haven, CT 06511 | Chapter 7 Trustee |

**MEMORANDUM OF FURTHER PARTIAL DECISION AND ORDER**
**RE: MOTION FOR DETERMINATION OF TAX LIABILITIES**

Lorraine Murphy Weil, United States Bankruptcy Judge

Before the court are the following (collectively, the "Contested Matters"): (a) United States' Motion Pursuant to Rule 9014 for Determination of Both the Estate's and the Debtor's Tax Liabilities Pursuant to § 505(a)(1) and Thereafter To Authorize Their Payment from the Escrow Account and/or by the Trustee (ECF No. 477, the "Tax Determination Motion");[1] (b) the above-referenced debtor's (the "Debtor") objection thereto (ECF No. 487); (c) the United States' Motion for Partial Summary Judgment in § 505 Contested Matter To Determine Mr. Water's 2001-Year Tax Liabilities (ECF No. 527, the "S/J Motion"); (d) Edward J. Waters' Cross-Motion for Partial Summary Judgment in § 505 Contested Matter To Determine Mr. Waters' 2001: Form 1040 Tax Liabilities (ECF No. 534);[2] and (e) the Debtor's "Second Objection": To IRS' Second Determination of 2001 Tax Liability and IRS Motion for Partial Summary Judgment (ECF No. 538).

**I.    BACKGROUND**

By memorandum and order dated February 8, 2008 (ECF No. 590 (as modified by ECF Nos. 602 and 617, the "2/8/08 Decision")), this court rendered a partial decision with respect to the Contested Matters. The 2/8/08 Decision disposed of issues relating to the proper tax treatment of certain mortgage interest and property tax payments. By memorandum and order dated April 16,

---

[1]    Citations herein to the docket of this title 11 case appear in the following form: "ECF No. ___." The movant with respect to the Tax Determination Motion hereinafter is referred to as the "IRS."

[2]    Although labeled strictly as a "cross-motion," the court deems the subject pleading also to be an objection to the S/J Motion.

2009 (ECF No. 622, the "4/16/09 Decision"), the court rendered a partial decision with respect to the accounting and professional fees that are the subject of this memorandum and order. Familiarity with the 2/8/08 Decision and the 4/16/09 Decision (which hereby are incorporated by reference) is assumed.[3] The 4/16/09 Decision established the Supplementation Procedure pursuant to which the Debtor was permitted to supplement the record in certain respects (and the IRS was permitted to respond to the same). With respect to the Supplementation Procedure, the Debtor filed three affidavits: ECF No. 655 with respect to the KPMG Fees (the "KPMG Affidavit"); ECF No. 656 with respect to the Honecker Fees (the "Honecker Affidavit"); and ECF No. 660 with respect to the Charmoy Fees (the "Charmoy Affidavit"). The IRS filed a unified response to the foregoing affidavits. (*See* ECF No. 673.) The Contested Matters now are ripe for the partial disposition provided for herein.

## II.    KPMG FEES

Except with respect to the $10,000.00 retainer (the "Retainer") referred to in the 2/08/08 Decision (*see* ECF No. 590 at 12 ¶ 16), there is no material dispute between the IRS and the Debtor with respect to the KPMG Fees. Exclusive of the Retainer, the Debtor asserts $56,700 in KPMG Fees as Schedule C expenses. (*See* ECF No. 655 at 3.) The IRS concedes the propriety of such treatment with respect to $56,666.66. (*See* ECF No. 673 at 6.)[4]

The only material dispute between the parties is with respect to the Retainer. As noted in the 4/16/09 Decision, "[t]he IRS [has] concede[d] that the KPMG Fees are a proper Section 162

---

[3]    All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to the same in the 2/8/08 Decision and/or the 4/16/09 Decision.

[4]    The court finds that the IRS properly has arrived at such figure by pointing to a rounding error made by the Debtor in arriving at his total. (*See id.*)

- 3 -

deduction for tax year 2001 to the extent that such fees were paid or billed in 2001 . . . ," (ECF No. 622 at 10, the "KPMG Concession"). The IRS claims that, with respect to the Retainer, the IRS made the KPMG Concession because it believed that the Retainer had been paid from the Escrow. (*See* ECF No. 673 at 4-5.)[5] However, in the KPMG Affidavit the Debtor avers that "CIIC paid the . . . [R]etainer . . . in early January, 2001," (ECF No. 655 at 4). The IRS notes that the Retainer was paid by CIIC before the existence of either the Escrow or the Stipulation. Accordingly, the IRS argues, it should be relieved of the KPMG Concession with respect to the Retainer.

The court cannot criticize the IRS for its mistake when the court itself also made an erroneous finding of fact in that regard. (*See* ECF No. 590 at 12-13 ¶ 16 ("The Debtor's response to the Tax Determination Motion lists . . . [the Retainer (among other amounts) as paid] from the Escrow.").) In any event, the Debtor does not rely on the KPMG Concession with respect to the Retainer. (*See* ECF No. 655 at 2 ("The Debtor argues that under accounting rules, and 26 U.S.C. § 1461(a) [sic], if ordinary business expenses are "accrued", the date of payment or billing has no bearing upon when a taxpayer may claim an accrued expense.").) Under the circumstances presented here, the court has determined that the IRS should be and hereby is relieved of the KPMG Concession and the erroneous finding of fact is amended consistently with the foregoing.

With respect to the Retainer, the IRS argues that "Waters is not permitted to deduct as a personal business expense fees paid by an offshore corporation to prepare its financial statements,"

---

[5] *See* ECF No. 673 at 5 n.3 ("The United States previously agreed that court-approved KPMG fees paid from the escrow could be deducted because they reflected reduction in the amount of the escrow that could reach Waters as a payment by CIIC to him of "wages" or any other income. A prior $10,000 payment directly by CIIC, however, should already have been accounted for, and could not have reduced an escrow that was not yet established.").

(ECF No. 673 at 5). The court agrees. Consequently, the court determines that the Debtor may claim only $56,666.66 as proper Section 162(a) Schedule C deductions for tax year 2001.[6]

### III. CHARMOY FEES

The Charmoy Affidavit generally is a request for this court to reconsider its determination that the Charmoy Fees were not "trade or business" expenses of the Debtor (or of CIIC). The court has been and remains unpersuaded by the Debtor's "monetization" and "repatriation" argument (*see, e.g.,* ECF No. 660 at 3) with respect to either the Debtor *or* CIIC.[7] Accordingly, the court stands by the 4/16/09 decision (as clarified herein) with respect to the "trade or business" expense issue.

The Debtor has failed to comply with the Supplementation Procedure with respect to the Charmoy Fees as Section 212 Schedule A deductions or otherwise to argue and provide support for Section 212 treatment. Accordingly, the court concludes that (a) none of the Charmoy Fees qualify as Section 162(a) Schedule C deductions for tax year 2001 and (b) only $17,000.00 in Charmoy Fees (subject to statutory limits) are properly included on Schedule A of the Personal Return as conceded by the IRS for tax year 2001 (*see* ECF No. 590 at 13 n.27).

### IV. HONECKER FEES

#### A. Relevant Facts

Some facts in respect of the Honecker Fees must be repeated here for clarity.

---

[6] To the extent (if any) that the Debtor seeks a declaratory judgment with respect to the tax treatment of certain KPMG Fees for the 2002 tax year (*see* ECF No. 655 at 7-8), such relief is inappropriate and the court declines to grant it (rendering no decision on the merits thereof).

[7] The court hereby clarifies the 4/16/09 Decision to make clear that the Charmoy Fees were not "trade or business" expenses of either the Debtor *or* CIIC.

On July 25, 2001, the court approved the application (*see* ECF No. 188) to retain Mr. Honecker as tax attorney for the chapter 11 debtor in possession (s*ee* ECF No. 191). Mr. Honecker was hired as the tax attorney for the debtor in possession under a general retainer "because of the extensive accounting services required," (ECF No. 188 ¶ 7).

On September 19, 2002, Mr. Honecker filed his Final Application for Compensation (ECF No. 264, the "Application") seeking $22,400.00 for fees and $198.86 for expenses for services rendered to the Debtor from August 4, 2001 through July 31, 2002. On October 23, 2002, the court approved (*see* ECF No. 273, the "Approval Order") the Application in full and authorized counsel for the Debtor to distribute that amount from the escrow (*see id.*).

In support of the propriety of the proposed Schedule C treatment of the Honecker Fees, the Debtor filed the Honecker Affidavit.[8] The Debtor argues that Mr. Honecker's retention extended both to him as "debtor in possession" and to him as "Debtor." (*See* ECF No. 656 at 2.) The Debtor, however, concedes that the representation of him as "Debtor" represented the bulk of Mr. Honecker's services.[9]

---

[8]   Attached to the Honecker Affidavit was a letter (the "Honecker Letter") from Mr. Honecker to the Debtor "Re: Legal Fees" (*see* ECF No. 656, Attachment). The court first notes that the Honecker Letter does not comply with Fed. R. Bankr. P. 56(e) as was required by the Supplementation Procedure established in the 4/16/09 Decision. Second, the Honecker Letter is replete with hearsay and, therefore, inadmissible statements. Consequently, the court will not consider and gives no weight to the Honecker Letter for purposes of determining whether the Honecker Fees are proper business expenses.

[9]   The Debtor states that of the $22,598.60 billed for attorney's fees and expenses by Mr. Honecker, only $1,470.00 (invoiced on March 26, 2002) was billed for services provided to him as "debtor in possession." Those services related to the preparation of the chapter 11 estates' 1998 and 2001 tax returns, the only services performed for the chapter 11 estate by Mr. Honecker. (*See* ECF No. 656 at 2.) The Debtor does not appear to argue that the foregoing amount (*i.e.*, $1,470.00) is a deductible business expense under 26 U.S.C. § 162(a) but instead, limits his discussion to Mr. Honecker's representation of "Edward J. Waters, as Debtor."

In the Honecker Affidavit, the Debtor states that, on August 23, 2000, Mr. Honecker was retained as tax counsel to represent the Debtor individually and to represent "each of . . . [the Debtor's] wholly owned investment banking companies." (ECF No. 656 at 3.)[10] The Honecker Affidavit further avers that Mr. Honecker was retained to assist and advise the Debtor and his companies with respect to a civil and criminal fraud investigation by the IRS. (*Id.* at 5.)[11] In addition, the Honecker Affidavit alleges that Mr. Honecker performed the following services:

- supervised the preparation of all corporate financial statements

- supervised the preparation of 1120S tax returns[12]

- supervised related tax, accounting and reporting requirements

- prepared Waters' Form 1040 Tax Returns incorporating his wholly owned corporations' results

- analyzed every investment banking activity of Waters with his wholly owned investment banking companies and

---

[10] The court notes that while the Affidavit of Proposed Tax Attorney (filed with the Application) disclosed that Mr. Honecker had represented the Debtor since August 23, 2000, no mention is made of the fact that Mr. Honecker also had represented the Debtor's corporate affiliates at any time prior to the filing of the Application.

[11] The court notes that the criminal fraud investigation concluded in February, 2001 and the Debtor was made aware of that fact. (*See* ECF No. 164 at 1, Debtor's Brief of the Case ("On February 15, 2001, Mr. Waters' tax attorney was informed by Assistant United States Attorney John A. Marrella, Criminal Division, that the United States Attorney's Office and the Department of Justice had declined prosecution in the criminal investigation of Mr. Waters for all tax years 1988 thru [sic] 1993.").)

[12] It appears that the Debtor is the owner of Cape Isles Investment Company, a Massachusetts 1120S corporation. (*See* ECF No. 656 at 3.)

- advised the Debtor of the business revenues of CIIC and the consequent wages paid from CIIC to the Debtor.

(*See* ECF No. 656 .)  The Honecker Affidavit contends that the foregoing services were "ordinary business expenses associated with th[e] investment banking revenues, whether as claimed by the taxpayer as belonging to CIIC or whether as alternatively claimed by the IRS as belonging to Mr. Waters individually under an 'alter ego' theory."[13]  (ECF No. 656 at 8.)

**B.     Analysis**

Annexed to the Honecker Affidavit are invoices (the "Invoices") that were submitted to the Debtor by Mr. Honecker.  (*See* ECF No. 656, Exhibit.)  The relevant Invoice periods reflect the following charges:

| Period Services Rendered | Amount Billed |
| --- | --- |
| 8/4/01 – 12/31/01 | $11,748.86 |
| 1/1/02 – 7/31/02 | $10,850.00 |

As the court previously noted, "[i]t is uncontested that, at all times, the Debtor was a cash basis taxpayer using the calendar year as his tax year."  (ECF No. 622 at 4.)  Pursuant to the Income Tax Regulations (the "Regulations"): "Under the cash receipts and disbursements method of accounting, amounts representing allowable deductions shall, as a general rule, be taken into account for the taxable year in which paid," 26 C.F.R. § 1.461-1(a)(1) (West 2010).

It does not appear that the Debtor argues that the Honecker Fees are proper Schedule C deductions for the subject year (*i.e.,* 2001) under a cash-basis taxpayer method of accounting.  That

---

[13]   The court notes that the IRS has not raised an alter ego theory of liability against the Debtor here.

is because it is uncontested that no portion of the Honecker Fees was "paid" in 2001. Rather, the Debtor is arguing that the Honecker Fees are "'accrued legal expenses' pursuant to Rev. Rul. 2007-3, 2007-4 I.R.B. 350 (2006), and in particular as a "recurring item exception" under Section 1.461-5(b)(1) permitting 'economic performance' through the 15th day of [the] ninth calendar month after the close of the taxable year where liability was incurred during the taxable year 2001 . . . ." (ECF No. 656 at 3.)

Under an accrual basis analysis, a taxpayer may deduct an expense under Section 162(a) "when they are incurred even if they have not yet been paid . . . ." *Interex, Inc. v. C.I.R.*, 321 F.3d 55, 58 (1st Cir. 2003). As stated by the Supreme Court: "[T]he standard for determining when an expense is to be regarded as 'incurred' for federal income tax purposes has been the 'all events' test prescribed by the Regulations." *United States v. Hughes Properties, Inc.*, 476 U.S. 593, 600 (1986).

> Section 1.461-1(a)(2)(i) of the Income Tax Regulations provides that, under an accrual method of accounting, a liability is incurred, and is generally taken into account for federal income tax purposes, in the taxable year in which (1) all the events have occurred that establish the fact of the liability, (2) the amount of the liability can be determined with reasonable accuracy, and (3) economic performance has occurred with respect to the liability (the "all events test"). *See also* § 1.446-1(c)(1)(ii)(A).
>
> The first prong of the all events test requires that all the events have occurred that establish the fact of the liability. Therefore, it is fundamental to the all events test that although expenses may be deductible before they become due and payable, *liability first must be firmly established. United States v. General Dynamics Corp.,* 481 U.S. 239, 243-4 (1987).
>
> Generally, under § 1.461-1(a)(2), all the events have occurred that establish the fact of the liability when (1) the event fixing the liability, whether that be the required performance or other event, occurs, or (2) payment therefore is due, whichever happens earliest. Rev. Rul. 80-230, 1980-2 C.B. 169; Rev. Rul 79-410, 1979-2 C.B. 213, *amplified by* Rev. Rul. 2003-90, 2003-2 C.B. 353. The terms of a contract are relevant in determining the events that establish the fact of a taxpayer's liability. *See, e.g., Decision, Inc. v. Commissioner,* 47 T.C. 58 (1966), *acq.*, 1967-2 C.B. 2.

> Section 461(h) and § 1.461-4 provide that, for purposes of determining whether an accrual basis taxpayer can treat the amount of any liability as incurred, the all events test is not treated as met any earlier than the taxable year *in which economic performance occurs with respect to the liability.*

Rev. Rul. 2007-3, 2007-4 I.R.B. 350 (2006) (emphasis added). *See also* 26 U.S.C. § 461(h)(4).

As noted, an order entered herein approving the retention of Mr. Honecker. However, entry of that order did "not establish a right to be paid by the bankruptcy estate." 3 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 327.03[2][c], at 327-19 (15th ed rev. 2006). *See also Ferrara & Hantman v. Alvarez (In re Engel)*, 124 F.3d 567, 572 (3d Cir. 1997). Rather, "[11 U.S.C.] § 330(a) requires court approval to create the obligation to pay the attorney's fees . . . [and] absent court approval neither the debtor nor the estate is ever liable." *Dery v. Cumberland Casualty & Surety Co. (In re 5900 Associates, Inc.)*, 468 F.3d 326, 331 (6th Cir. 2006) (citation and internal quotation marks omitted). *See also In re Brown*, 371 B.R. 486, 499 (Bankr. N.D. Okla. 2007) ("Absent court approval, neither the debtor nor the estate is liable for legal services related to . . . [the bankruptcy case]."); *In re Fox*, 140 B.R. 761, 762 (Bankr. D. S.D. 1992) ("Counsel may only obtain or retain compensation upon court approval of fee applications . . . ."). Consequently, "[c]ourt approval under § 330(a) is what creates the liability, not the performance of the services," *In re 5900 Associates*, *supra* (citation and internal quotation marks omitted).

Here, upon this court's approval of the Application, the liability to Mr. Honecker was fixed and the amount of such liability could be "determined with reasonable accuracy." As noted, the court issued the Approval Order on October 23, 2002. Because approval of the Application did not occur until well after the taxable year ended, the Debtor has failed to satisfy the "all events test" as stated in Section 1.461-1(a)(2)(i) of the Regulations.

The Debtor further argues that the "recurring item exception" would apply here "permitting 'economic performance' through the 15th day of the ninth calendar year after the close of the taxable year where liability was incurred during the taxable year 2001 . . . ," (ECF No. 656 at 3).

> Section 1.461-5(b)(1) [promulgated under 26 U.S.C. § 461(h)(3)] provides a recurring item exception to the general rule of economic performance. Under the recurring item exception, a liability is treated as incurred for a taxable year if: (i) at the end of the taxable year, all events have occurred that establish the fact of the liability and the amount can be determined with reasonable accuracy; (ii) economic performance occurs on or before the *earlier* of (a) the date that the taxpayer files a return (including extensions) for the taxable year, or (b) the 15th day of ninth calendar month after the close of the taxable year; (iii) the liability is recurring in nature; and (iv) either the amount of the liability is not material or accrual of the liability in the taxable year results in better matching of the liability against the income to which it relates than would result from accrual of the liability in the taxable year in which economic performance occurs.

Rev. Rul. 2007-3, 2007-4 I.R.B. 350 (2006).

Here, the event fixing liability (*i.e.*, the Approval Order) did not occur until October 23, 2002. Accordingly, the "all events test" has not been met under any formulation of that test (even the "recurring item exception") because the liability was not fixed within any arguably applicable period. Thus, even if the Debtor were to establish the other requisite elements for Section 162 deductibility for the Honecker Fees (and the court makes no finding or conclusion in that regard), the debtor could not prevail because the "all events test' as to the Honecker Fees was not satisfied during the applicable period. Accordingly, the court concludes that the Honecker Fees are not proper Schedule C deductions on the Personal Return.[14]

---

[14] Because the Honecker Fees were not paid (or accrued) within the applicable time period, they also are not Section 212 Schedule A deductions for tax year 2001. Arguably, the Honecker Fees were a business expense for 2001 of CIIC. However, such issue is not ripe unless and until the Debtor amends his 2001 tax return to take the foregoing position. That has not been done. Therefore, the court will not address that issue here.

### V. **CONCLUSION**

For the reasons set forth above, the court determines that (1) with respect to the KPMG Fees, the Debtor may claim only $56,666.66 as proper Section 162(a) Schedule C deductions for tax year 2001 on the Personal Return; (2) with respect to the Charmoy Fees, (a) none of the Charmoy Fees qualify as Section 162(a) Schedule C deductions for tax year 2001 and (b) only $17,000.00 in Charmoy Fees (subject to statutory limits) are properly included as Section 212 Schedule A deductions for tax year 2001 on the Personal Return; (3) with respect to the Honecker Fees, (a) none of the Honecker Fees qualify as Section 162(a) Schedule C deductions for tax year 2001 and (b) none of the Honecker Fees qualify as Section 212 Schedule A deductions for tax year 2001.

Dated: October 14, 2010                                  BY THE COURT

*Lorraine Murphy Weil*
**Lorraine Murphy Weil**
Chief United States Bankruptcy Judge